ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

COLIN C. SAMPSON (CABN 249784)
Assistant United States Attorney
     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7200
     FAX: (415) 436-7009
     Colin.Sampson@usdoj.gov

LIA RETTAMMEL (MDBN 1112150047)
Trial Attorney, Civil Rights Division
     950 Pennsylvania Ave. NE – 4CON 7.915
     Washington, DC 20530
     (202) 514-3204
     Lia.Rettammel@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 24-00152 WHO |
| Plaintiff, | UNITED STATES' MOTIONS *IN LIMINE* |
| v. | Pretrial:    October 8, 2024 |
| | Trial:       October 21, 2024 |
| CSABA JOHN CSUKÁS, | Court:    Honorable William H. Orrick |
| Defendants. | |

# TABLE OF CONTENT

I.      INTRODUCTION..................................................................................................1

II.     THE INDICTMENT AND ALLEGATIONS .........................................................1

III.    MOTIONS IN LIMINE .........................................................................................2

1.   Motion in Limine No. 1: Defendants' Statements Should Be Admitted As Party-Opponent Admissions If Offered By The United States...........................................2

2.   Motion in Limine No. 2: The Court Should Prohibit Defendant From Admitting His Own Prior Out-Of-Court Statements...........................................................................3

    A.   A Defendant's statements are inadmissible hearsay if offered by him.............3
    B.   The "rule of completeness" does not permit Defendants to introduce excerpts of recorded statements.......................................................................................4

3.   Motion in Limine No. 3: The Court Should Exclude Irrelevant Exhibits.....................5

4.   Motion in Limine No. 4:  The Court Should Admit "Intrinsic" Evidence Of The Charged Crimes.........................................................................................................6

5.   Motion in Limine No. 5: The Court Should Exclude Evidence from Defendant Or Defenses That Have Not Been Produced In Discovery Or Properly Disclosed...........7

    A.   Defendant has reciprocal disclosure obligations under Rule 16. ....................7
    B.   The Court should require Defendant to produce reverse *Jencks* material pursuant to his reciprocal disclosure obligations under Rule 26.2...................8
    C.   The Court should bar undisclosed affirmative defenses.................................10
    D.   The Court should preclude any undisclosed evidence of mental conditions and preclude Defendant from introducing lay opinion testimony regarding his mental state..................................................................................................10

6.   Motion in Limine No. 6: The Court Should Allow The Government To Show Certain Exhibits During The Opening Statement. ..................................................................12

7.   Motion In Limine No. 7: The Court Should issue A Sequestration Order Excluding All Witnesses Trom The Trial, Except When Testifying, With One Exception. .........12

8.   Motion In Limine No. 8: Defendant Should Not Be Allowed To Reference Punishment in Front of The Jury..............................................................................13

9.   Motion In Limine No. 9: Defendant Should Not Be Allowed To Reference Equally Available Witnesses................................................................................................14

IV.     CONCLUSION....................................................................................................15

1

**TABLE OF AUTHORITIES**

2

**Federal Cases**

3

4

*Huddleston v. United States*, 485 U.S. 681 (1988) .................................................................. 7

5

*Kean v. C.I.R.*, 469 F.2d. 1183 (9th Cir. 1972) ..................................................................... 15

6

*Rogers v. United States*, 422 U.S. 35 (1975)(1975) ............................................................ 14

7

*United States v. Aleman*, 592 F.2d 881 (5th Cir. 1979) ................................................... 6, 7

*United States v. Collicott*, 92 F.3d 973 (9th Cir. 1996) ...................................................... 5

8

*United States v. Davis*, No. 22-50058 (9th Cir. 2024) .................................................... 5, 6

9

*United States v. DeGeorge*, 380 F.3d 1203 (9th Cir. 2004) ................................................. 6

10

*United States v. Fernandez*, 839 F.2d 639 (9th Cir. 1988) ................................................... 4

*United States v. Frank*, 956 F.2d 872 (9th Cir. 1992) ........................................................ 14

11

*United States v. Leal-Del Carmen*, 697 F.3d 964 (9th Cir. 2013) ..................................... 15

12

*United States v. Little*, 753 F.2d 1420 (9th Cir. 1984) ....................................................... 13

13

*United States v. Loftis*, 843 F.3d 1173 (9th Cir. 2016) ......................................................... 6

14

*United States v. Lussier*, 929 F.2d 25 (1st Cir. 1995) ........................................................ 13

*United States v. Matlock*, 415 U.S. 164 (1972)..................................................................... 3

15

*United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007) ...................................................... 4

16

*United States v. Mohney*, 949 F.2d 1397 (6th Cir. 1991) ................................................... 13

17

*United States v. Moreno*, 102 F.3d 994 (9th Cir. 1996) ..................................................... 10

*United States v. Nakai*, 413 F.3d 1019 (9th Cir. 2005) ........................................................ 3

18

*United States v. Olano*, 62 F.3d 1180 (9th Cir. 1995) ....................................................... 14

19

*United States v. Ortega*, 203 F.3d 675 (9th Cir. 2000) .................................................... 3, 4

20

*United States v. Ratfield*, 342 Fed. Appx. 510 (11th Cir. 2009) ....................................... 13

21

*United States v. Rea*, 958 F.2d 1206 (2d Cir. 1992) .......................................................... 11

*United States v. Reed*, 726 F.2d 570 (9th Cir. 1984) ......................................................... 14

22

*United States v. Rhynes*, 218 F.3d 310 (4th Cir. 2000) ...................................................... 13

23

*United States v. Richter*, 488 F.2d 170 (9th Cir. 1973) ....................................................... 9

24

*United States v. Rodriguez Cortes*, 949 F.2d 532 (1st Cir. 1991) ....................................... 8

*United States v. Scarmazzo*, 554 F.Supp.2d 1102 (9th Cir. 2008) ................................... 14

25

*United States v. Sine*, 493 F.3d 1021 (9th Cir. 2007) .......................................................... 5

26

*United States v. Soliman*, 813 F.2d 277 (9th Cir. 1987) .................................................. 6, 7

27

*United States v. Swenson*, 298 F.R.D. 474 (D. Idaho 2014) ............................................... 8

28

*United States v. Thomas*, 835 F.2d 219 (9th Cir. 1987) ..................................................... 13

*United States v. Valencia-Riascos*, 696 F.3d 938 (9th Cir. 2012) ...................................... 13

*United States v. Vasquez-Landaver*, 527 F.3d 798 (9th Cir. 2008) ................................... 10

*United States v. Vizcarra–Martinez*, 66 F.3d 1006 (9th Cir. 1995) ...................................... 6

## Federal Statutes

18 U.S.C. § 249 ....................................................................................................................... 1

18 U.S.C. § 3500 .................................................................................................................... 9

## Federal Rules

Federal Rule of Criminal Procedure 12.2 ...................................................................... 8, 11

Federal Rule of Criminal Procedure 16 ......................................................................... 7, 8

Federal Rule of Criminal Procedure 26.2 ............................................................. 5, 7, 8, 9

Federal Rule of Evidence 106 ....................................................................................... 4, 5

Federal Rule of Evidence 404 ....................................................................................... 6, 7

Federal Rule of Evidence 613 ............................................................................................. 5

Federal Rule of Evidence 615 ................................................................................... 12, 13

Federal Rule of Evidence 701 ........................................................................................... 11

Federal Rule of Evidence 702 ................................................................................... 8, 11

Federal Rule of Evidence 703 ............................................................................................. 8

Federal Rule of Evidence 704 ........................................................................................... 11

Federal Rule of Evidence 705 ............................................................................................. 8

Federal Rule of Evidence 801 ........................................................................... 2, 3, 5, 6

## I.   INTRODUCTION

The United States (the "government") respectfully submits the following motions *in limine* in this matter.  The government requests the opportunity to supplement these motions *in limine* if additional legal issues arise requiring the Court's intervention.  In addition, the government requests the opportunity to supplement these motions *in limine* to address any issues that may be triggered by the defense at a later date.

## II.   THE INDICTMENT AND ALLEGATIONS

Defendant Csaba John Csukás ("Csukás" or "Defendant") was charged with committing a hate crime against victim S.B. at a designated curbside rideshare pickup location at San Francisco International Airport ("SFO") on October 26, 2023.  *See* Indictment, ECF No. 1.  Specifically, the Indictment alleges that Csukás willfully caused physical injury to S.B. because of the actual or perceived national origin and/or religion of S.B., in violation of 18 U.S.C. § 249(a)(2).

S.B. was returning to California non-stop from an international business trip on October 26, 2023, and had requested a Lyft, Inc. ("Lyft") rideshare ride from SFO to his residence in the vicinity of San Jose, California.  Defendant, driving for Lyft that day, was assigned to S.B.'s ride, and received S.B.'s name and profile picture to identify him at the pickup area. When Csukás pulled up to the designated rideshare pickup area, he approached S.B. The Defendant then stated S.B.'s first name and asked if S.B. was Jewish or Israeli.  When S.B. confirmed that he was, Csukás stated that he would not drive a Jewish or Israeli person in his car, turned and walked away, and then reapproached S.B. and assaulted S.B. by striking him in the face with his closed fist.  One SFO's surveillance cameras captured the assault.  Csukás got into his vehicle after the assault.  Immediately after the assault, S.B. began recording a video with his cell phone and asked a bystander to call 911.  Csukás, wearing a white surgical mask, exited the vehicle and gestured for S.B. to get in the vehicle, saying "No . . . Let's go, man, let's just go" and "my family is dying right now."  S.B. refused to get in the vehicle, walked away from Csukás, and again implored bystanders to call 911. The surveillance video captures Csukás returning to his vehicle and leaving the scene.  S.B. and a bystander then gave a statement to San Francisco Police Department officers that arrived on the scene shortly afterward.

Approximately 19 days earlier, Hamas attacked civilian and military sites in a surprise attack on

Israel, leading to a declaration of war and military operations by the Israel Defense Forces into Gaza. Before the assault, Csukás had shared numerous articles and videos about the conflict on his public-facing Reddit page, posted a first-person video from a march in San Francisco in "solidarity with Gaza, Palestine," and had circulated a story the day before the assault about a "Pro-Israeli Woman in London attack[ing] people supporting Palestinians."  Csukás's Terms of Service Agreement with Lyft and similar agreement with Uber, Inc. prohibits "discriminat[ion] against or harass[ment of] anyone on the basis of race, national origin, religion, gender identity or expression, physical or mental disability, medical condition, marital status, age or sexual orientation."

## III.   MOTIONS IN LIMINE

1.   <u>**Motion in Limine No. 1**</u>**: Defendants' Statements Should Be Admitted As Party-Opponent Admissions If Offered By The United States.**

The government respectfully moves the Court, pursuant to Fed. R. Evid. 801(d)(2)(A), for an Order that the prior statements of Defendants are admissible if offered against him by the government.

The government intends to offer numerous statements and adopted statements of Csukás in its case-in-chief.  The government has produced to Defendants all the videos, posts, and other records, containing Csukás' statements that the government intends to introduce at trial.  Csukás' statements may include the following categories:

(1) Csukás' statements to S.B. when he arrived at SFO to provide a ride to S.B., including inquiring if S.B. was Jewish or Israeli, and stating that he would not drive a Jewish or Israeli person in his car.

(2) Csukás' statements immediately before the assault, including "Free Palestine!"; "No . . . Let's go, man, let's just go;" and "my family is dying right now."

(3) Csukás' online statements and posts relevant to his state of mind and willfulness in attacking S.B., including:

    a.      Csukás' June 11, 2022, recorded book review of a memoir of growing up in Gaza;

    b.      Csukás' video post on October 15, 2023, described as "solidarity with Gaza, Palestine."

    c.      Csukas' public Reddit re-posts prior to the assault regarding selected relevant

issues involving Gaza, Palestine, Israel, the 2023 conflict between Israel and Hamas involving Gaza, and issues surrounding protests regarding the Israel/Hamas conflict.

A statement is not hearsay if the statement "is offered against an opposing party and . . . was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). These statements made by a defendant are not hearsay and are squarely admissible pursuant to Fed. R. Evid. 801(d)(2)(A). *United States v. Matlock*, 415 U.S. 164, 172 (1972). The Defendant's statements and questions upon meeting the victim about his name, religion, and national origin are directly relevant to the assault that happened immediately afterward. Moreover, whether true or not, Csukás' statements after the assault about family dying reflect his state of mind in attacking S.B., directly tying the reason for his assault to S.B.'s religion and national origin and the ongoing the Israel/Hamas war. Csukás' willfulness in attacking S.B. is anticipated to be a central issue at trial, and the government is entitled to introduce his prior statements on Israel, Gaza, and Palestine, and the Israel/Hamas war as directly relevant to his motivation in assaulting a stranger with a Jewish name. Accordingly, the statements are admissible if offered by the government against Defendant under Rule 801(d)(2)(A).

**2.    Motion in Limine No. 2: The Court Should Prohibit Defendant From Admitting His Own Prior Out-Of-Court Statements.**

The government respectfully moves the Court, pursuant to Fed. R. Evid. 801(d)(2)(A), for an Order prohibiting the defense from introducing Csukás' own statements. A defendant's own prior statements are inadmissible hearsay if offered by the defense.

**A.    A Defendant's statements are inadmissible hearsay if offered by him.**

Under the Federal Rules of Evidence, prior statements made by a defendant are non-hearsay and are admissible as admissions by a party opponent only if offered against him by the opposing party. Fed. R. Evid. 801(d)(2)(A). A defendant may not use his own prior statements even where the government introduces incriminating portions of them. *See, e.g., United States v. Nakai*, 413 F.3d 1019, 1022 (9th Cir. 2005) (holding inadmissible hearsay defendant's exculpatory statements that defense sought to introduce after FBI agent testified about defendant's inculpatory statements); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (non-self-inculpatory statements, even if made contemporaneously with other self-inculpatory statements, are inadmissible hearsay; rule of

1   completeness does not allow for admission of inadmissible hearsay); *United States v. Fernandez*, 839

2   F.2d 639, 640 (9th Cir. 1988) (district court properly sustained government's hearsay objection to

3   defendant's attempt to solicit defendant's post-arrest statements during cross-examination of FBI agent);

4   *United States v. Mitchell*, 502 F.3d 931, 964 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2902 (2008)

5   (exculpatory statements by defendant were inadmissible hearsay even when made in a broader self-

6   inculpatory confession).

7          Here, where the government intends to offer Csukás' prior statements, he cannot then offer his

8   own out-of-court statements at trial in his opening statement, on cross-examination of the government's

9   witnesses, or through direct examinations of his witnesses, should he choose to call any.  Any attempt to

10  place recorded statements "before the jury without subjecting themselves to cross-examination are

11  precisely what the hearsay rule forbids." *Fernandez*, 839 F.2d at 640.  For example, should Defendant

12  seek to introduce his own self-serving statements about the assault in correspondence with a Lyft

13  employee hours afterward, those statements are hearsay if offered by him through his testimony or by

14  any other witness.  Further, shortly after the assault, Defendant spoke with an acquaintance that is an

15  Assistant Public Defender in Fresno County and spoke for approximately 14 minutes.[1]  Should

16  Defendant seek to elicit his own out-of-court statements in the government's case-in-chief, the Federal

17  Rules of Evidence preclude him from doing so.

**B.    The "rule of completeness" does not permit Defendants to introduce excerpts of recorded statements.**

18

19         The Court should reject any attempt by Defendant to introduce his self-serving statements under

20  the rule of completeness. Defendant may attempt to rely on Federal Rule of Evidence 106 (the "rule of

21  completeness") to introduce portions of his statements that are not offered by the United States.  But

22  Rule 106 is not a rule of admissibility.  Rather, it addresses the order of proof.  "Rule 106 does not

23  render admissible otherwise inadmissible hearsay." *United States v. Mitchell*, 502 F.3d 931, 965 n.9

24  (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2902 (2008).  It simply allows an adverse party to require that

25

26

27         [1] The government has not sought to interview this witness as a result of Defendant's statement to
    Lyft that he had spoken to his attorney.  However, Defendant may waive any applicable attorney-client
28  privilege in seeking to introduce communications with this attorney. Defendant should not be permitted
    to refer to the government's failure to seek to interview this potential witness.

1  other <u>admissible</u> evidence be introduced at the same time.  *See United States v. Sine*, 493 F.3d 1021,

2  1037 n.17 (9th Cir. 2007) (rule of completeness "does not allow the admission of otherwise inadmissible

3  statements"); *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996) (Rule 106 "does not compel

4  admission of otherwise inadmissible hearsay evidence").  Accordingly, while the government is

5  permitted to introduce a Defendant's statements as admissions of a party opponent under Rule

6  801(d)(2)(A), his own prior statements are not admissible if offered by him and should be excluded.

7      **3.**    <u>**Motion in Limine No. 3**</u>**: The Court Should Exclude Irrelevant Exhibits**

8        The defense has disclosed a lengthy exhibit[2] consisting of information about over one thousand

9  of Csukás' prior rides as a Lyft driver, including rider ratings and feedback such as "[v]ery nice person,

10  well verse on the local area!" and "[t]hanks for the awesome scuba tips!"  These records contain hearsay

11  of the riders, and are not relevant to Defendant's motivation in attacking S.B. on October 26, 2023.

12  Such records, including the driver rating for Csukás, are impermissible character evidence, and further

13  threaten to confuse the issues before the jury and waste time.

14        Defendant has further noticed eleven exhibits consisting of screenshots of the victim's private

15  Twitter account.  All of these consist of "retweets" of other accounts' articles and statements with some

16  connection to the Israel/Hamas war or individuals' support or opposition to it.  All of the proposed

17  exhibits are dated from May 2024 to July 2024 – seven months after he was assaulted by Csukás.

18  S.B.'s tweets are irrelevant to matters at issue at the trial, specifically, Csukás state of mind on October

19  26, 2023, when he allegedly attacked S.B. because of his religion or national origin. S.B. and Csukás did

20  not know one another prior to the October 26, 2023, incident and did not follow one another on Twitter.

21  Indeed, Babylon Bee (*see* Exhibit 104) is a satire site of "fake news you can trust." *See*

22  *https://babylonbee.com/*.  Moreover, to the extent these are considered prior statements of the witness

23  for purposes of Rule 613, Defendant has failed to show they "inconsistent" with any matter over which

24  S.B. has previously testified.  Nor is S.B. a party-opponent for purposes of Rule 801(d)(2).  *See United*

25

26  ───────────────

    [2] Csukás has disclosed Exhibits numbered 100 through 111 and an Exhibit List (filed at ECF No.

27  46).  He has not provided statements from interviews that the defense investigator has conducted, which
will be required pursuant to Federal Rule of Criminal Procedure 26.2(a).  Exhibit 100, which contains

28  emails and phone numbers, and addresses of numerous riders, including S.B. and at least one other
witness, must be redacted before it is filed or admitted.

1    *States v. Davis*, No. 22-50058 (Ninth Circuit Jan 22, 2024) (Rule 801(d)(2) "applies only to parties.

2    Chambers was not a party; he was the victim.") (unpublished opinion).  Nor is S.B.'s Twitter profile nor

3    the fact that his Twitter account was once public but is now private probative of anything at issue in the

4    trial.  *See* Exhibit 103.

5

6        Defendant's attempts to introduce evidence of S.B.'s subsequent retweets lacks any relevance,

7    threatens to engender bias and prejudice in the jury against S.B. and to the benefit the Defendant, and

8    further threatens to confuse the issues, and should be excluded from trial.

9

10       **4.    Motion in Limine No. 4:  The Court Should Admit "Intrinsic" Evidence Of The Charged Crimes.**

11       The government moves this Court for an order admitting evidence of the hate crime committed

12   by Csukás as intrinsic proof of his willfulness in committing the charged crimes charged in the

13   Indictment. Evidence of "other acts" is generally governed by Rule 404(b).  However, "[e]vidence

14   should not be treated as 'other crimes' evidence when 'the evidence concerning the ['other'] act and the

15   evidence concerning the crime charged are inextricably intertwined.'"  *United States v. Soliman*, 813

16   F.2d 277, 279 (9th Cir. 1987) (quoting *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979)

17   (alteration in original)).  There are "two categories of evidence that may be considered 'inextricably

18   intertwined' with a charged offense and therefore admitted without regard to Rule 404(b)."  *United*

19   *States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004) (citing *United States v. Vizcarra–Martinez*, 66

20   F.3d 1006, 1012 (9th Cir. 1995)).  Evidence is intrinsic if (1) the evidence "constitutes a part of the

21   transaction that serves as the basis for the criminal charge" or (2) the government finds it necessary in

22   order "to offer a coherent and comprehensible story regarding the commission of the crime."  *Id*; *see*

23   *also United States v. Loftis*, 843 F.3d 1173 (9th Cir. 2016) ("We hold the evidence of *uncharged*

24   *transactions* is not evidence of 'other' crimes or acts under rule 404(b), because it is evidence of part of

25   the *crime charged* in the indictment – the overall scheme to defraud.") (emphasis in original).

26       Here, the government's presentation of the facts relating to the charged conduct requires the

27   admission of evidence concerning Csukás' statements, including:

28       1.  Evidence that Defendant violated Lyft's terms of service when he (1) denied S.B. a ride based on

S.B.'s religion and national origin, and (2) assaulted his passenger; and

2. Evidence of Defendant's views and interest regarding Gaza, Palestine, Israel, and the Israel/Hamas war and protests involving the conflict, made prior to the assault on October 26, 2023.  Defendant's prior statements about Israel and the conflict between Israel and Hamas involving Gaza are directly relevant to Defendant's willfulness and motive for assaulting S.B.

This "[e]vidence should not be treated as 'other crimes' evidence" because "'the evidence concerning the ['other'] act and the evidence concerning the crime charged are inextricably intertwined.'" *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987) (quoting *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979) (alteration in original)).  In particular, the acts above are all closely related to Defendant's motivation and willfulness in attacking a stranger whose name he perceived to be Jewish or Israeli.  For these reasons, the government respectfully requests an order stating that the following evidence is "intrinsic" rather than "extrinsic" evidence of the charged crimes, and therefore admissible without reference to Federal Rule of Evidence Rule 404(b).

Alternatively, even if this evidence was not relevant to or inextricably intertwined with the charged conduct—which it is for the reasons set forth above—it is nevertheless probative of Defendant's motive, plan, preparation, and lack of mistake in committing the charged crimes under Rule 404(b).  *See Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct").  For these reasons, the Court should rule that the above evidence is admissible.

**5.      Motion in Limine No. 5: The Court Should Exclude Evidence from Defendant Or Defenses That Have Not Been Produced In Discovery Or Properly Disclosed.**

The government respectfully moves for an order (A) precluding Defendant from introducing evidence that he has not produced under his reciprocal discovery obligations, including under Federal Rule of Criminal Procedure 16(b), (B) requiring production of prior statements of defense witnesses (other than the defendant) that relate to the subject matter about which the defense witness(es) will testify pursuant to Rule 26.2 (reverse *Jencks*), and (C) precluding Defendant from presenting any affirmative defense not properly disclosed.

**A.      Defendant has reciprocal disclosure obligations under Rule 16.**

1    Defendants have disclosure requirements under Federal Rule of Criminal Procedure 16(b), which

2  include (A) "books, papers, documents, data, photographs, [or] tangible objects . . . [if] the defendant

3  intends to use the item in the defendant's case-in-chief at trial;" (B) "results or reports of any physical or

4  mental examination" if the "defendant intends to use the item in the defendant's case-in-chief at trial";

5  and (C) "a written summary of any testimony that the defendant intends to use under Rules 702, 703, or

6  705 of the Federal Rules of Evidence" pertaining to expert witnesses.  If Defendants fail to comply with

7  these obligations, the court may prohibit him from introducing the undisclosed evidence at trial.  Fed. R.

8  Crim. P. 16(d)(2)(C).  *See also*, *e.g.*, *United States v. Rodriguez Cortes*, 949 F.2d 532, 546 (1st Cir.

9  1991) (observing that "[i]t is within the trial court's discretion to exclude evidence for noncompliance

10 with" Rule 16 and affirming district court's exclusion of records a defendant had not properly disclosed

11 during discovery); *United States v. Swenson*, 298 F.R.D. 474, 478 (D. Idaho 2014) (barring the

12 defendants from introducing evidence at trial after they "unreasonably refused to produce reciprocal

13 discovery" while "enjoy[ing] the benefit of the Government's generous production").

14    The government has requested reciprocal discovery from the defense.  The government is aware

15 that the defense has conducted interviews of multiple witnesses on the government's Witness List, but

16 has not been provided any witness statements.  As of the filing of this motion, however, Defendant has

17 recently provided the government with Exhibits 100 through 111, which consist of compiled Lyft

18 records and screen captures of the victim's private Twitter account.  Defendant has provided no notice

19 of a mental condition pursuant to Rule 12.2, and has disclosed no expert witnesses.  Moreover, given the

20 advanced stage of the proceedings, with trial less than one month away, the government would be

21 prejudiced by any late disclosure.  Accordingly, the Defendant should be precluded from using any

22 documents that he has failed to produce in discovery pursuant to his reciprocal discovery obligations

23 under Rule 16.

24       **B.    The Court should require Defendant to produce reverse *Jencks* material**
            **pursuant to his reciprocal disclosure obligations under Rule 26.2.**
25

26    Defendant's Witness list includes a defense investigator.  Although the government is aware that

27 a defense investigator has conducted several attempted interviews, no interview memoranda has been

28 provided to the government to date.  Rule 26.2(a) of the Federal Rules of Criminal Procedure provides:

       After a witness other than the defendant has testified on direct examination,

> the court, on motion of a party who did not call the witness, must order an
> attorney for the government or the defendant and the defendant's attorney
> to produce, for the examination and use of the moving party, any statement
> of the witness that is in their possession and that relates to the subject matter
> of the witness's testimony.

The statute embodying the rule was enacted, among other things, to "place in the criminal rules the substance of . . . 18 U.S.C. § 3500 (the Jencks Act)."  Advisory Committee Notes, S. 1437, 95th Cong. 1st Sess. (1977).  It also requires reciprocal disclosure, directing both the government and defense to produce statements of witnesses in their possession that relate to the subject matter of the witness testimony.

Pursuant to Rule 26.2(a), neither the government nor a defendant is required to produce witness statements until after the witness's testimony on direct examination.  Pursuant to the Local Rules, however, the government has already produced memorandums of interviews of non-law enforcement witnesses in its possession.  Because of the reciprocal nature of Rule 26.2, and in the interest of expediting trial proceedings, Defendant should be required to produce his witnesses' statements prior to trial as well.  If Defendant declines to produce his witnesses' statements until after direct examination, the trial will be delayed unnecessarily because the government requires time to review those statements prior to cross-examination.

In addition to efficiency concerns, fairness in the administration of these proceedings requires the same result.  Federal courts have "the responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness."  *United States v. Richter*, 488 F.2d 170, 173 (9th Cir. 1973) (citation omitted).  The Court has "wide latitude" to "carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice."  *Id.*  The government requests that the Court use this power to effectuate the orderly administration of justice by ordering the pretrial production of any defense witness statements, as well as any reciprocal discovery as stated above.  As of now, the government has no knowledge of any non-expert defense witnesses, possesses no witness statements, and possesses four pages of exhibits from the defense (1061-1064).  The Federal Rules and the Court's pretrial orders require the government to be afforded this fundamental fairness, and the Court should, over two years after his indictment, preclude any evidence or proposed testimony not

disclosed accordingly.

### C.   The Court should bar undisclosed affirmative defenses.

The government also moves the Court for an Order precluding the defense from exposing the jury to any affirmative defense that has not been properly disclosed.  The law in the Ninth Circuit is clear that criminal defendants do not have an unfettered right to present justification or duress to the jury; they must first make a prima facie showing of the defense.  *United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008) ("We have long held that a defendant is not entitled to present a duress defense to the jury unless the defendant has made a prima facie showing of duress in a pre-trial offer of proof.").  Without such a showing, evidence of such a defense is not relevant as a matter of law. *United States v. Moreno*, 102 F.3d 994, 998 (9th Cir. 1996).  Thus, in the absence of an adequate proffer with respect to duress or justification, the Court may exclude any evidence related to such a defense and may deny jury instructions related to it.  *Id.*

The government anticipates that Defendant may seek to present a justification or duress defense at trial.  Defendant's self-serving statement to Lyft seven hours after the offense and after Lyft suspended his account included "I am in talks with my attorney"[3] and "I acted in self-defense after a belligerent would-be passenger became irate and attempted to assault me."  Here, Defendant has made no proffer with respect to any aspect of justification or duress, and reviewing the evidence in the case, no basis for such a defense is evident.  Although Defendant has sought to include his own hearsay claiming that S.B. attacked him, he has provided no disclosure or evidence to meet his burden with respect to this defense, and indeed, none exists.  Therefore, the Court should prohibit Defendant from presenting undisclosed defenses to the jury.

### D.   The Court should preclude any undisclosed evidence of mental conditions and preclude Defendant from introducing lay opinion testimony regarding his mental state.

The Government anticipates that Defendant, through his witnesses or cross-examination of government witnesses, may attempt to elicit lay opinion testimony regarding his state of mind.  While Defendant himself may testify regarding his involvement and state of mind at the time of the offense, he

---

[3] This is the subject of a separate Motion *in Limine* regarding Defendant's hearsay statements.

cannot adduce such evidence through the testimony of other witnesses, either on direct or cross-examination, and may not present expert testimony regarding a physical or mental condition.  Testimony of this nature constitutes improper lay opinion and should be excluded.

> Rule 701 prohibits lay opinion testimony unless three conditions are satisfied:
> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.  Therefore, before lay opinion testimony on any subject can be admitted, it must satisfy all three preconditions of Rule 701.

Opinion testimony concerning a party's willfulness, or lack thereof, "in most instances. . . will not meet the requirements of Rule 701."  *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992) (witness opinion testimony as to a defendant's knowledge will often not be helpful within the meaning of Rule 701 even when the witness testified about defendant's observations, what the defendant was told, and what the defendant said or did, "because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant knew").  Accordingly, the defendant should be precluded from presenting lay opinion testimony regarding his "state of mind" evidence through third-party witnesses during trial.

Moreover, Defendant cannot introduce medical opinions regarding his state of mind or medical conditions at the time.  Although Defendant has not noticed any mental state defense pursuant to Federal Rule of Criminal Procedure 12.2, it is anticipated that he may seek to admit testimony or evidence of a ████████████████████████████████████.[4]  Defendant's telephone records indicate a call to a pharmacy and a ████████████████ hours before the assault.  To date, Defendant has not noticed any expert witnesses regarding his mental or physical state at the time of the offense.  Any late disclosure of such evidence would prevent the government from evaluating and rebutting any claimed mental or physical condition that Defendant claims affected his conduct at the time of the offense, and threatens to interrupt the trial.  As a result, Pursuant to Rules 701 and 704, the Court should exclude any

---

[4] The government's only evidence regarding this condition consists of one prescription indicating it is for "████" made over 20 months before October 26, 2023.

1  late disclosure of medical evidence and preclude Defendant from providing any opinions about any

2  medical or mental conditions affecting him on October 26, 2023.

3      **6.     Motion in Limine No. 6: The Court Should Allow The Government To Show**
4             **Certain Exhibits During The Opening Statement.**

5          The United States seeks the Court's permission to exhibit a small number of documents or screen

6  captures during its opening arguments.  Providing the jury with a preview of some of the categories of

7  evidence they will likely see over the course of the trial will aid the jury in framing and understanding

8  the issues.

9          These exhibits will likely be admitted into evidence.  For example, Defendant has agreed to the

10 authenticity (though not relevance) of exhibits from Lyft as business records that are independently

11 admissible as argued above.  Effective presentation of the evidence supports the government's use of a

12 limited amount of trial evidence to assist the jury in understanding the types of evidence they will be

13 asked to weigh and the government's theory of prosecution.  This includes the following types of

14 evidence:

15      • A screen capture from surveillance video of the incident (Exhibit 42);

16      • A screen capture of S.B.'s video of Defendant at the scene of the assault (Exhibit 11);

17      • A screen capture of the Lyft screen showing information about the ride and driver
18        (Exhibit 13, US-001113);

19      • A map or other aerial depiction of the scene (for example, Exhibit 97);

20 The jury, when properly instructed, will understand that the attorneys' arguments are not evidence and

21 to disregard any evidence that is not ultimately admitted at trial.

22      **7.     Motion In Limine No. 7: The Court Should issue A Sequestration Order Excluding**
        **All Witnesses Trom The Trial, Except When Testifying, With One Exception.**
23

24          The government hereby respectfully moves the Court for a sequestration order excluding all

25 witnesses from the trial, except when testifying, with two exceptions.  Witnesses are generally excluded

26 from trial, except when testifying, so that they cannot hear other witnesses' testimony.  *See* Fed. R. Evid.

27 615.  Rule 615(a)-(d) notes several exceptions to this general rule, two of which apply to individuals the

28 government may call as witnesses at trial.

1   First, Federal Bureau of Investigation ("FBI") Special Agent Kathleen Millspaugh, one of two

2   co-case agents assigned to this case, should be excluded from any sequestration order pursuant to Rule

3   615(b) & (c).  *See United States v. Valencia-Riascos*, 696 F.3d 938, 941-42 (9th Cir. 2012) (citing

4   *United States v. Little*, 753 F.2d 1420, 1441 (9th Cir. 1984) ("[T]he district court did not abuse its

5   discretion in allowing the case agent to remain at the prosecutor's table. The case agent was exempt

6   from sequestration.") (citation omitted)); *United States v. Thomas*, 835 F.2d 219, 222-23 (9th Cir.

7   1987)).  It is expected that Agent Millspaugh may further testify as a summary witness, and should be

8   excluded from any sequestration order pursuant to Rule 615(c).  *See United States v. Ratfield*, 342 Fed.

9   Appx. 510, 512-13 (11th Cir. 2009) (unpublished); *United States v. Rhynes*, 218 F.3d 310, 318 n.8 (4th

10  Cir. 2000); *United States v. Lussier*, 929 F.2d 25, 29 (1st Cir. 1995) (stating that regardless of whether

11  agent was considered a "fact" or "expert" witness, he did not need to be sequestered because his

12  testimony was based on, summarized, and was consistent with the evidence presented at trial); *United*

13  *States v. Mohney*, 949 F.2d 1397, 1404-05 (6th Cir. 1991).

14  The government reserves the right to designate any other agent as its representative, and to

15  request permission for that agent to be present in court during the testimony of other witnesses.

16  Accordingly, the government respectfully requests an order excluding all witnesses from the trial, except

17  when testifying, with the exception of Special Agent Millspaugh, who should be excluded from a

18  sequestration order and allowed to observe all portions of the trial.

19  **8.   Motion In Limine No. 8: Defendant Should Not Be Allowed To Reference Punishment in Front of The Jury.**

21  The government moves to preclude as irrelevant and prejudicial any reference by the defense to

22  Defendant's potential sentence during all phases of the trial (including jury selection, opening

23  statements, examination of witnesses, including the Defendant, who is listed on the Defense Witness

24  List, and summation).

25  References to penalties could be as overt as "You understand the defendant is facing a decade in

26  prison if convicted," or as subtle as "the defendant is facing a lot of time," "the defendant's liberty is at

27  stake in this trial," or "your decision will have consequences for a long time to come."  Once the jury

28  hears anything about punishment, the "bell" cannot be un-rung or the damage neutralized by a curative

instruction.

"It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992); *see also Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should have been admonished that it "had no sentencing function and should reach its verdict without regard to what sentence might be imposed"); *United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984) (trial judge properly instructed jury that the "punishment provided by law for the offenses charged in the indictment are matters exclusively within the province of the court.  It should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused").

Information about penalties draws the attention of the jury away from its chief function as the trier-of-fact.  *See United States v. Olano*, 62 F.3d 1180, 1202 (9th Cir. 1995).  Evidence about punishment opens the door to compromise verdicts and confuses the issues to be decided.  *Id*.  Simply put, "it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Scarmazzo*, 554 F.Supp.2d 1102, 1109 (9th Cir. 2008).   The Ninth Circuit has recognized this by prohibiting the jury from considering punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt.  9th Cir. Model Crim. Jury Instr. § 6.22 (2019) ("The punishment provided by law for this crime is for the court to decide. You may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt.").

There is only one reason why Defendant would want the jury to hear information about the sentence that he might face if convicted: to hope that at least one juror will think that the potential sentence that he faces is too long, and that because of that potential penalty, at least one juror will acquit him even though he is guilty.  The Court should therefore prohibit the defense from making reference to punishment in the presence of the jury at any point in these proceedings.

9. <u>**Motion In Limine No. 9**</u>**: Defendant Should Not Be Allowed To Reference Equally Available Witnesses**

The defense should be prohibited from making reference to, or arguments about, the failure to call witnesses who are equally available to both parties—which includes all potential witnesses in this

1   case. "Where witnesses are equally available to either party, no adverse inference may be drawn from

2   the failure of one party to call them," *Kean v. C.I.R.,* 469 F.2d. 1183, 1187 (9th Cir. 1972).  In *Kean*, the

3   Ninth Circuit addressed the necessity of the trial court to determine the facts and circumstances bearing

4   on the witness's relation to the parties noting that the potential witness must be available both legally

5   and practically. *Id.* Furthermore, this is consistent with the requirement that before a missing witness

6   instruction be given, the party requesting it must show that the witness is peculiarly within the power of

7   the other party. *United States v. Leal-Del Carmen*, 697 F.3d 964, 974 (9th Cir. 2013).

8           All the potential witnesses in this case are equally available to be called by either party.

9   Although the Defendant has no obligation to present any evidence at all, they have the full ability to

10   subpoena and elicit testimony from any civilian witnesses. Since all of those witnesses are available to

11   both government and defense, commenting on the failure to call any one of them should not be

12   permitted.

13   **IV.      CONCLUSION**

14           For all of the foregoing reasons, the Court should issue rulings prior to trial on the motions set

15   forth above or, in the alternative, at trial if and when the issues identified arise.  The government also

16   reserves the right to supplement these motions *in limine* if later presented with additional issues

17   requiring the Court's intervention.

18

19   DATED:  September 23, 2024                              Respectfully submitted,

20                                         ISMAIL J. RAMSEY
                                      United States Attorney

21

22                                           */s/*
                                                                             _____

23                                           COLIN C. SAMPSON

24                                           Assistant United States Attorney
                                        LIA RETTAMMEL

25                                           Trial Attorney, Civil Rights Division

26

27

28