JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
CANDIS MITCHELL, Bar No. 242797
ELISSE LAROUCHE, Bar No. 308533
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:          Candis_Mitchell@fd.org

Counsel for Defendant Csukás

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **United States of America,** | **Case No.:** CR 24–152 WHO |
| Plaintiff, | **Defendant's Motions In Limine** |
| v. | **Court:**           Courtroom 2, 17th Floor |
| **Csaba John Csukás,** | **Hearing Date:**  October 8, 2024 |
| Defendant. | **Hearing Time:**  3:30 p.m. |

NOTICE OF MOTIONS IN LIMINE

Please take notice that on October 8, 2024, at 3:30 p.m., or as soon thereafter as counsel may be heard, the defendant, Csaba John Csukás, through his attorneys, Candis Mitchell and Elisse Larouche, and the Office of the Federal Public Defender will ask this Court to enter an order granting the motions outlined below.

(1) Exclude evidence related to Mr. Csukás's social media activity under FRE 403;
(2) Preclude the Court from sending indictment into the jury room;
(3) To permit attorney conducted voir dire;
(4) To designate all government witnesses as under defense subpoena unless released;
(5) Exclude witnesses not designated as case agent;
(6) Order production of grand jury transcripts;
(7) Exclude government evidence for lack of relevance;
(8) The Court should exclude testimony from Revital Barsheshet;
(9) Designate defense counsel's investigator as case agent;
(10) The Court should allow for future objections by the defense to later-disclosed exhibits and witnesses.

BACKGROUND STATEMENT OF FACT

Mr. Csukás is a Daly City resident with no criminal history. He is an immigrant to this country and naturalized after arriving early in his life as a refugee of the Bosnian war. He is a graduate of the University of California, Davis, with a bachelor's degree in history. After graduation he worked as a Spanish interpreter in law offices and legal clinics, assisting clients navigate immigration law, including naturalization applications and visa and asylum issues.

The Israel-Hamas War, between Israel and Palestinian militants, especially Hamas and the Palestinian Islamic Jihad, began on October 7, 2023, when Hamas launched a land, sea, and air assault on Israel from the Gaza Strip. The next day, Israel declared itself in a state of war and on October 9 Israel ordered a siege of the Gaza Strip. The government alleges that on October 26, 2023, only weeks after the violence in Israel-Palestine escalated dramatically, Mr. Csukás, with anti-Jewish and/or anti-Israeli animus, caused bodily injury to S.B., violating 18 U.S.C. § 249(a)(2)—Hate Crimes. In October, Mr. Csukás was working as a rideshare app driver; he had overwhelmingly positive customer feedback. On October 26, Mr. Csukás arrived at San Francisco International Airport to pick up a customer, S.B. Airport security footage shows Mr. Csukás get out of his vehicle, approach the trunk of the vehicle, outstretch his arm for a handshake, speak briefly with S.B., and strike S.B.—all within

thirty seconds. Airport security footage did not record any audio of the conversation between the two men before S.B. was struck, nor did any witnesses besides Mr. Csukás and S.B. hear what was said. The government alleges that Mr. Csukás asked S.B. if S.B. was Jewish or Israeli, stated that he would not transport a Jewish or Israeli person, and attacked S.B. by striking S.B. in the face with his fist.

## MOTIONS IN LIMINE

**1. This Court should exclude evidence related to Mr. Csukás's social media activity as violative of Fed. R. Evid. 403.**

In their proposed exhibit list, the government has noticed captures from Mr. Csukás's YouTube and Reddit accounts.[1] These captures include social media posts about the conflict and global reaction to the conflict in the Israel-Hamas War, reviews of books describing the life of Palestinians, and videos capturing protests in support of Palestine and reactions to Pro-Palestinian organizing. Additionally, though the government has only noticed exhibits from Reddit and YouTube, Mr. Csukás seeks to prevent the government from introducing evidence of his prior social media activity, including:

- Posts made on the Reddit channel r/csabajohncsukás
- Videos uploaded to the YouTube channel "csabajohncsukás"
- Posts made on the Twitter/X account @csabajohncsukás
- Posts made on the Instagram account @cjcold
- Posts made on the LinkedIn account for Csaba John Csukás

The Court must exclude admission of Mr. Csukás's social media activity under Fed. R. Evid. 403. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Mr. Csukás seeks to exclude his prior social media activity because the minimally probative value is not outweighed by the significant prejudice and confusion the content will provoke.

---

[1] *See* Govt. Exhibit List, Dkt. 40, Exh. 71-83.

### 1.1. Mr. Csukás's social media activity is much more prejudicial than probative under FRE 403 and would risk confusing the jury.

Introducing evidence of Mr. Csukás's social media activity is far more prejudicial and confusing than it is probative and must be excluded under Rules 403.

First, the social media activity is not sufficiently probative. The posts are not necessary to prove that Mr. Csukás acted with discriminatory intent. Nor do they sufficiently bear on his intent at the time of the alleged offense. Further, the social media content that is merely reposted by Mr. Csukás does not bear on his intent or mindset at the time of the alleged incident.

Second, inclusion of Mr. Csukás's social media activity creates a significant danger of unfair prejudice towards Mr. Csukás. Individuals who merely support Palestinian human rights have been labeled by many as terrorist sympathizers and radical.[2] Anti-Muslim and Anti-Palestinian sentiment has dramatically increased since October 7, 2023, including a marked increase in hate crimes.[3] "CAIR [the Council on American-Islamic Relations] received 3,578 complaints in the final three months of 2023, following the escalation of hostilities in Israel and Palestine and an associated campaign of anti-Muslim bigotry and anti-Palestinian racism targeted at supporters of Palestinian human rights. This marks 44% of all complaints received in 2023."[4] Admitting Mr. Csukás's social media activity may provoke the jury to bring any bias against those who express support of Palestinian human rights against Mr. Csukás. The Court should also hesitate to admit the social media activity due to its propensity to inspire the conflation of pro-Palestinian sentiments with a support hate toward Jewish or Israeli people – exactly the element which the government must prove in its case. The government's presumed attempts to translate support of Palestinian human rights to Mr. Csukás's hate of S.B. is extremely prejudicial.

Third, the social media posts would risk confusion to the jury. Mr. Csukás is not on trial for his political beliefs or his expression of free speech. He is on trial for the alleged attack of S.B. on October

---

[2] Bolton, Alexander, *Graham: Only 'dumba—es and 'terrorist sympathizers' among Gaza protesters*, The Hill, https://thehill.com/homenews/senate/4651127-lindsey-graham-terrorist-sympathizers-gaza-protesters/, (May 8, 2024).
[3] *Fatal, The Resurgence of Anti-Muslim Hate*, CAIR 2024 Civil Rights Report, pgs. 4–7, https://islamophobia.org/wp-content/uploads/2024/04/2024_Fatal_The_Resurgence_of_Anti-Muslim_Hate-1.pdf (2024).
[4] *Id.* at 7.

26 based on his perceived national origin or religion. That Mr. Csukás may have strong views on political conflicts and other political matters does not bear on whether he is antisemitic as the government asserts. Introduction of the social media content will confuse the jury into conflating pro-Palestinian political support for the intent required for the charged hate crime.

In sum, the danger of undue prejudice and confusion of the issues is exceptionally and unacceptably high in these circumstances, significantly outweighing any minimal probative value that might arise from admission of the social media posts. Therefore, due to the clear danger of undue prejudice, confusion of the issues, and misleading the jury, reference to Mr. Cuskás's social media posts should be excluded.

**2. This Court should not allow the government to present the indictment to the jury.**

An indictment is not evidence. It presents only accusations, and nothing more. While the Court maintains discretion as to whether to submit the Indictment to the jury[5] the Jury Instructions Committee of the Ninth Circuit cautions against it.[6] *See, e.g.*, *United States v. Lattimore*, No. 19-cr-00046-BLF, (N.D. Cal. Dec. 16, 2022) (granting criminal defendant's motion to exclude indictment provided that the parties agree to neutral statement of the case that can be read to the jury).

Such caution should be exercised in this case. The Court can fashion both preliminary and closing jury instructions identifying the allegations raised in this case and presenting the issues to be determined by the jury. Given the potential for prejudice that the indictment creates, there is no reason in this case for the Court to allow the government to submit the indictment to the jury.

**3. This Court should allow defense counsel to conduct Voir Dire.**

Fed. R. Crim. P. 24(a)(1) provides that "[t]he court may examine prospective jurors or may permit the attorneys for the parties to do so." Pursuant to Rule 24(a)(1), to provide effective assistance of counsel and to exercise Mr. Csukás's right to trial by an impartial jury, Mr. Csukás is requesting that the Court allow defense counsel to conduct more questioning of the prospective jurors than simply asking questions that follow up voir dire examination by the Court or merely

---

[5] *See e.g., Shayne v. United States*, 255 F.3d 739 (9th Cir. 1958).
[6] Ninth Circuit Jury Procedure Manual, § 4.6. ("the Committee believes that great caution should be exercised in providing a jury with the indictment since it is frequently cast in highly prejudicial language").

submitting questions to ask. Particularly in cases involving "matters in which a number of citizens may be expected to have biases or strong inclinations," thorough voir dire must be conducted to facilitate informed exercise of both peremptory challenges and challenges for cause.[7]

Here, the Israel-Palestine war is an intensely polarizing and controversial matter. Emotions are incredibly high over the conflict and the astounding loss of lives, including many innocent lives. Mr. Csukás is requesting that defense counsel be allowed to conduct substantial voir dire on issues relevant to the case, including whether prospective jurors distinguish anti-Zionism and anti-Semitism and whether jurors identify those with Pro-Palestine views to be anti-Semitic or have vitriol against Jewish or Israeli people. Because of the severity of the conflict and views arising from and because of the attorneys' intimate knowledge of the present case, attorney voir dire is necessary to protect Mr. Csukás's constitutional rights to an impartial jury.[8]

**4. This Court should designate all noticed government witnesses as under defense subpoena unless released.**

Government witnesses noticed for trial occasionally are released by the government without informing the defense, and thereafter become unavailable. For Mr. Csukás to retain access to these witnesses, he requests this Court to order that any released government witnesses be considered under defense subpoena.

Indigent defendants such as Mr. Csukás are provided the opportunity to have the government subpoena witnesses on their behalf by the Sixth Amendment and by Fed. R. Crim. P. 17(b).[9] In addition, this Court has the inherent power to subpoena witnesses on behalf of indigents.[10] To safeguard against the loss of vital witness testimony and to ensure that this indigent defendant is provided all Fifth and Sixth Amendment rights, Mr. Csukás requests that the Court exercise its

---

[7] *Darbin v. Nourse*, 664 F.2d 1109, 1113 (9th Cir. 1981) (The Ninth Circuit held the district court erred in denying voir dire questions investigating pro-police bias in a §1983 civil suit, alleging a police officer assaulted and wrongfully withheld mail and visitation rights from an inmate).
[8] *United States v. Mendoza*, 157 F.3d 730, 734 (9th Cir. 1998) (discussing the defendant's constitutional right to an impartial jury that will conscientiously apply the law and find the facts).
[9] *United States v. Barker*, 553 F.2d 1013, 1019 (6th Cir. 1997).
[10] *See Lloyd v McKendree*, 749 F.2d 705, 706-07 (11th Cir. 1985); *Link v. Wabash*, 370 U.S. 626, 630 (1962) ("The inherent powers of the federal courts are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.").

inherent power to order that any released government witnesses be considered under defense subpoena for the duration of the trial.

**5. This Court should exclude witnesses not designated as case agents.**

Mr. Csukás requests that the Court exclude witnesses (other than a party to the proceeding) from the courtroom "so that they cannot hear the testimony of other witnesses," unless the person's presence is shown "to be essential to the presentation of the party's claim or defense" or the person is authorized by statute to be present.[11]

When a government witness is exempt from a court order of exclusion under Rule 615, that witness should testify before all other non-exempt government witnesses or not at all. This approach necessarily dovetails with Rule 611(a), which provides that "[t]he court should exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence to make those procedures effective for determining the truth." Requiring exempted witnesses to testify first also helps achieve the goals of Rule 615, while simultaneously respecting the dictates of that rule's enumerated exemptions.[12]

**6. This Court should order production of grand jury transcripts.**

The Court should order production of grand jury transcripts if a witness who will likely testify at the trial of Mr. Csukás also is likely to have testified before the grand jury. The defense requests that the government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any need for recess in the proceedings for defense counsel to examine the statements pursuant to Fed. R. Crim. P. 26.2(d).

---

[11] Fed. R. Evid. 615.
[12] *See Mitchell*, 733 F.2d at 329 ("[B]etter practice suggests that if the [exempt] agent is to testify, he should testify as the Government's first witness, unless, . . . there [are] good reasons otherwise."); *In re United States*, 584 F.2d 666, 667 (5th Cir. 1978) (holding that agent designated under Rule 615(2) as government's representative could not be excluded; however, it was proper to order the agent to testify at an early stage of trial); *see also* 2 Federal Rules of Evidence Manual, 1166 (Stephen Salzburg, Michael M. Martin, Daniel J. Capra eds. 1998) ("Where a witness falls into one of the exceptions to Rule 615, it does not mean that the policy that drives the Rule is inapplicable. . . . [T]he trial court could use its authority under Rule 611(a) to require the non-sequestered witness to testify early, if not first, in the case.").

### 7. This Court should exclude government exhibits for lack of relevance

In their filings the government indicated plans to seek admission of:[13]

    Govt. Exh. 55 – Golden1 Bank Account Records for Mr. Csukás
    Gov. Exh. 56-60 – TMobile Records for Mr. Csukás
    Govt. Exh. 61-65 – Records from Uber for Mr. Csukás
    Govt. Exh. 67-70 – Records from Twitter Employment of Mr. Csukás

Mr. Csukás objects to the admission of these exhibits as not relevant to the case. Federal R. Evid. 104 addresses questions of admissibility generally, including witness qualification determinations, relevancy as supported by sufficient evidence, and the like. Rules 401 and 402 define "Relevant Evidence" and admissibility of only relevant evidence. Here, Mr. Csukás's bank records, call records, records of driving for Uber, and material from his employment at Twitter offer no relevancy to the pending charge. On October 26, 2023, Mr. Csukás was driving for Lyft and not Uber's rideshare service. Additionally, he was not employed by Twitter, and had been separated from employment with them since March 2023.[14] As to his TMobile call records, there is no indication as to how his call records might be relevant to the charged offense. Finally, there is no financial aspect to the charged offenses that would make his bank records relevant. As a result, none of the government's noticed exhibits have any relevant value to proving up a fact at issue in the case and thus should be deemed inadmissible.

### 8. The Court should exclude testimony from Revital Barsheshet

The government provided notice in its proposed witness list of the intention to call Revital Barsheshet as a witness in the case. Ms. Barsheshet is the spouse of S.B. and the government noticed her with the intent that she testify about "observations of injuries to S.B., and S.B.'s medical appointments and actions in the months after the assault."[15] Mr. Csukás objects to the admission of Ms. Barsheshet's testimony as not relevant, pursuant to Fed. R. Evid. 401, and well as a violation of Fed. R. Evid. 403 as an undue delay and wasting time of the jury in addition to presenting cumulative evidence.

The government has given notice of its intent to introduce two sets of medical records for S.B.,

---

[13] See Govt. Exhibit List, Dkt. 40.
[14] See Govt. Exhibit 70.
[15] See Govt. Amended Witness List, Dkt. 50.

hospital records from Good Samaritan Hospital as well as OneMedical Records.[16] In addition, S.B. will himself be testifying about any injuries he suffered. It would be unnecessary and duplicative for additional information to be provided by Ms. Barsheshet regarding observations of injuries to S.B.

Additionally, the testimony of Ms. Barsheshet regarding her husband's medical injuries carries a significant risk of unfair prejudice. Given the emotional nature of the subject, her statements may evoke sympathy from the jury, thereby impacting their judgment on the factual issues at stake. While S.B.'s medical injuries are relevant as to an element of the offense, Ms. Barsheshet's perspective may not provide unique or reliable insights beyond what can be established through S.B.'s testimony, medical professionals, or objective evidence. The jury may misinterpret her emotional testimony as conclusive evidence of S.B.'s alleged suffering, which could skew their perception. Finally, introducing personal testimony from Ms. Barsheshet risks confusing the jury regarding the standard of proof required. Her emotional narratives could lead jurors to focus on sympathy rather than the actual evidence presented.

Finally, Ms. Barshshet should not be allowed to testify regarding S.B.'s statements about the incident, which would constitute impermissible hearsay.

For these reasons, the testimony of Ms. Barsheshet regarding S.B.'s medical injuries and appointments should be excluded under Rule 104 and 403, as its prejudicial impact far outweighs any probative value and testimony may include impermissible hearsay

**9. Mr. Csukás requests the defense investigator be designated a case agent for the defense.**

The defense seeks to designate investigator Michael Portman as a "case agent" so that he may be permitted to remain in the courtroom throughout the duration of the trial pursuant to Fed. R. Evid. 615.[17] The motion is made so that Mr. Portman can be free to enter or leave the courtroom, to hear the testimony or portions of the testimony of other witnesses, to consult with counsel during the trial, including counsel relaying what witnesses had testified to, and to testify as to the results of investigations, including investigations prompted by testimony of other witnesses.

---

[16] *See* Govt. Exhibit List, Dkt. 40, Exh. 18 and 19.
[17] *See also United States v. Little*, 753 F.2d 1420, 1441 (9th Cir.1985) ("[W]e find that the district court did not abuse its discretion in allowing the case agent to remain at the prosecutor's table.").

Mr. Portman falls under Fed. R. Evid. 615(c)'s exception for "a person whose presence a party shows to be essential to presenting the party's claim or defense" to be present during trial testimony.[18] Mr. Portman's presence is essential to the presentation of the case due to his depth of knowledge surrounding the anticipated evidence and his knowledge of Mr. Csukás and his background.[19] Mr. Portman's absence would impede the ability of counsel to function. Courts in this district have routinely held that like the government's case agent, the defense's investigator may be present at the trial under Rule 615.[20]

Although Mr. Portman may testify as a fact witness concerning the results of his investigation, he will likely be testifying to "simple objective facts," which is testimony "ordinarily not subject to tailoring."[21] Further, there is no difference between he and the government's case agent in terms of concern of changing or conforming testimony.[22] Accordingly, Mr. Portman should be permitted to remain in the courtroom while testimony of other witnesses is being presented.

**10. This Court should exclude government exhibits and witnesses not yet produced to the defense.**

The government has not yet produced what have been marked as government exhibits 95-98. Dkt. 40. The defense preserves its ability to object to content in those exhibits once produced to the defense and any other later-produced exhibits and witnesses.

CONCLUSION

For the above reasons, Mr. Csukás requests that the Court grant his submitted motions.

---

[18] *Id.*, Advisory Committee Notes, 1972 Proposed Rules.
[19] *See United States v. Ortiz*, 10 F.Supp.2d 1058, 1067 (N.D. Iowa 1998) (permitting defense investigator to remain in the courtroom during trial because the case involved a complicated trial).
[20] *See, e.g., United States v. Sparks*, No. 21-cr-00281-VC, Dkt. 137 at 5 (N.D. Cal. Nov. 18, 2022) (order allowing Federal Defender's Office investigator to remain in trial under Rule 615).
[21] *United States v. Prichard*, 781 F.2d 179, 183 (10th Cir.1986) (Testimony regarding "simple objective facts" is "ordinarily not subject to tailoring, and, if it were, it could have been exposed easily.").
[22] *Compare United States v. Klaphake*, 64 F.3d 435, 437 (8th Cir.1995); *United States v. Agnes*, 753 F.2d 293, 307 (3d Cir.1985).

| | |
|---|---|
| Dated: September 23, 2024 | Respectfully submitted, |
| | JODI LINKER<br>Federal Public Defender<br>Northern District of California |
| | /S<br>CANDIS MITCHELL<br>ELISSE LAROUCHE<br>Assistant Federal Public Defender |