JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
CANDIS MITCHELL, Bar No. 242797
ELISSE LAROUCHE, Bar No. 308533
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:    (415) 436-7700
Facsimile:    (415) 436-7706
Email:        Candis_Mitchell@fd.org

Counsel for Defendant Csukás

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **United States of America,** | **Case No.:** CR 24–152 WHO |
| Plaintiff, | **Defendant's Objections to Government's Motions In Limine** |
| v. | |
| **Csaba John Csukás,** | **Court:** Courtroom 2, 17th Floor |
| Defendant. | **Hearing Date:** October 8, 2024 |
| | **Hearing Time:** 3:30 p.m. |

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................i

TABLE OF AUTHORITIES .....................................................................................i

ARGUMENT ...........................................................................................................1

    1.    Opposition to Government MIL #1: The government may offer Mr. Csukás' party-opponent statements under Fed. R. Evid. 801(d)(2)(A), but his online posts and re-posts are not admissible. .....................................................................................1

    2.    Opposition to Government MIL #2: Mr. Csukás should be permitted to introduce his admissible prior out-of-court statements based on Rule 106, as the statements are not hearsay, and to protect his constitutional right to confrontation and a complete defense.6

        2.1.    The rule of completeness permits the Court to admit Mr. Csukás' statements. ...6

        2.2.    Prohibiting the defense from admitting Mr. Csukás' statements would violate his constitutional rights to confrontation and a complete defense.............................9

    3.    Opposition to Government MIL #3: The defense's Lyft driver reviews and S.B.'s X exhibits are relevant and admissible. ...................................................................10

    4.    Opposition to Government MIL #4: Irrelevant evidence of Lyft's terms of service and evidence of the defendant's views are not inextricably intertwined and should be excluded. ..............................................................................................................11

    5.    Response to Government MIL #5: The defense has complied with its discovery obligations..........................................................................................................14

        5.1.    Discovery obligations under Rule 16 ....................................................14

        5.2.    Reverse *Jencks* ....................................................................................16

        5.3.    Affirmative defenses ...........................................................................16

    6.    Response to Government MIL #6: Generally, the defense does not oppose the government's use of the noted exhibits in opening. ......................................16

    7.    Opposition to Government MIL #7: The government should be restricted to exempting on case agent from the witness exclusion order..............................................16

    8.    Opposition to Government MIL #8: The Court may not impose an absolute unilateral ban on references to punishment or jury nullification. ...................................17

    9.    Opposition to Government's Motion in Limine 9: The Court should not prohibit the defense from arguing that the government has failed to meet its burden. .....................18

    CONCLUSION ...................................................................................................19

# TABLE OF AUTHORITIES

**Federal Cases**

*Bourjaily v. United States,*
   483 U.S. 171 (1987) ............................................................................................ 3

*Conde v. Henry,*
   198 F.3d 734 (9th Cir. 1999) ............................................................................ 19

*Del. v. Van Arsdall,*
   475 U.S. 673 (1986) ............................................................................................ 9

*Evalt v. United States,*
   359 F.2d 534 (9th Cir. 1966) ............................................................................ 18

*Flynn v. CNN, Inc.,*
   621 F. Supp. 3d 432 (S.D.N.Y. 2022) ............................................................... 3

*Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co. ,*
   519 F. Supp. 668 (D. Del. 1981) ..................................................................... 17

*Sea-Land Serv. v. Lozen Int'l, L.L.C.,*
   285 F.3d 808 (9th Cir. 2002) .............................................................................. 4

*Shannon v. United States,*
   512 U.S. 573 (1994) ..................................................................................... 17, 18

*Strickland v. Washington,*
   466 U.S. 668 (1984) .......................................................................................... 15

*United States v. Begay,*
   No. 19-10251, 2022 WL 2235784 (9th Cir. June 22, 2022) ................................ 7

*United States v. Birrell,*
   421 F.2d 665 (9th Cir. 1970) ............................................................................ 18

*United States v. Castro-Cabrera,*
   534 F. Supp. 2d 1156 (C.D. Cal. 2008) ............................................................. 7

*United States v. Causey,*
   609 F.2d 777 (5th Cir. 1980) ............................................................................ 17

*United States v. Collicott,*
   92 F.3d 973 (9th Cir. 1996) ........................................................................... 7, 8

*United States v. Daly,*
   974 F.2d 1215 (9th Cir. 1992) .......................................................................... 12

*United States v. Dorsey,*
   677 F.3d 944 (9th Cir. 2012) ............................................................................ 12

*United States v. Farnham,*
   791 F.2d 331 (4th Cir. 1986) ............................................................................ 17

*United States v. Franco,*
   No. R1600268001-TUC-CKJ-EJM, 2017 WL 11466629 (D. Ariz. Sept. 7, 2017) ................................. 9

*United States v. Giese,*
    597 F.2d 1170 (9th Cir. 1979) ............................................................................. 5

*United States v. Haischer,*
    780 F.3d 1277 (9th Cir. 2015) .......................................................................... 2, 9

*United States v. Holmes,*
    No. 5:18-cr-00258-EJD-1, 2021 WL 2044470 (N.D. Cal. May 21, 2021) ............ 19

*United States v. Johnson,*
    62 F.3d 849 (6th Cir. 1995) ......................................................................... 17, 18

*United States v. Markevich,*
    775 F. App'x 287 (9th Cir. 2019) ........................................................................ 9

*United States v. Lopez,*
    4 F.4th 706 (9th Cir. 2021) ................................................................................ 6

*United States v. McLister,*
    608 F.2d 785 (9th Cir. 1979) ........................................................................... 5-6

*United States v. Medearis,*
    380 F.3d 1049 (8th Cir. 2004) .......................................................................... 14

*United States v. Mitchell,*
    502 F.3d 931 (9th Cir. 2007) .............................................................................. 8

*United States v. Monks,*
    774 F.2d 945 (9th Cir. 1985) .............................................................................. 3

*United States v. Musaibli,*
    647 F. Supp. 3d 571 (E.D. Mich. 2022) ............................................................... 8

*United States v. Perry,*
    857 F.2d 1346 (9th Cir. 1988) ........................................................................... 9

*United States v. Pulley,*
    922 F.2d 1283 (6th Cir. 1991) .......................................................................... 16

*United States v. Safavian,*
    233 F.R.D. 12 (D.D.C. 2005) .............................................................................. 4

*United States v. Sanchez-Estrada,*
    394 F. App'x 428 (9th Cir. 2010) ........................................................................ 8

*United States v. Sine,*
    493 F.3d 1021 (9th Cir. 2007) ......................................................................... 7-8

*United States v. Solorio-Soto,*
    300 F. App'x 487 (9th Cir. 2008) ...................................................................... 19

*United States v. Torres,*
    794 F.3d 1053 (9th Cir. 2015) ............................................................................ 2

*United States v. Vallejos,*
    742 F.3d 902 (9th Cir. 2014) .............................................................................. 6

*United States v. Velazquez,*
    1 F.4th 1132 (9th Cir. 2021) ............................................................................. 18

*United States v. Vizcarra-Martinez,*
   66 F.3d 1006 (9th Cir. 1995) ........................................................................... 11, 12

*United States v. Wells,*
   879 F.3d 900 (9th Cir. 2018) ................................................................................. 12

*United States v. Williams,*
   989 F.2d 1061 (9th Cir. 1993) ............................................................................... 12


**State Cases**

*State v. Goode,*
   300 N.C. 726, 268 S.E.2d 82 (1980) ................................................................. 15, 16


**Rules**

Fed. R. Crim. P. 16 ............................................................................................... 14, 16

Fed. R. Crim. P. 26.2 ............................................................................................ 14, 16

Fed. R. Evid. 106 ................................................................................................... 6, 7, 8

Fed. R. Evid. 401 ........................................................................................................... 1

Fed. R. Evid. 402 ........................................................................................................... 1

Fed. R. Evid. 403 .................................................................................................. 1, 11, 2

Fed. R. Evid. 404 ................................................................................................... *passim*

Fed. R. Evid. 405 ......................................................................................................... 10

Fed. R. Evid. 615 ................................................................................................... 16, 17

Fed. R. Evid. 801 ................................................................................................... *passim*

Fed. R. Evid. 802 ........................................................................................................... 6

Fed. R. Evid. 803 ................................................................................................... 8, 10

Fed. R. Evid. 807 ........................................................................................................... 9


**Other**

*Black's Law Dictionary*
   (11th ed. 2019) .......................................................................................................... 10

**ARGUMENT**

1. <u>**Opposition to Government MIL #1:**</u> **The government may offer Mr. Csukás' party-opponent statements under Fed. R. Evid. 801(d)(2)(A), but his online posts and re-posts are not admissible.**

As a general matter, Mr. Csukás does not dispute that under Federal Rule of Evidence 801(d)(2)(A), his own statements do not constitute hearsay when offered against him. However, Rule 801(d)(2)(A) does not by itself establish the admissibility of any statement by any person, including Mr. Csukás. Rather, the rule simply provides that certain statements are not hearsay. Statements must still be admissible under Federal Rules of Evidence 401, 402, 403.

The Court should not admit the government's third requested category of "defendant's statements," including "Csukás' online statements and posts relevant to his state of mind and willfulness in attacking S.B." for four reasons. Gov't Mot. in Lim. at 2-3. First, the statements are not relevant to the offense. Fed. R. Evid. 401. Second, the statements' probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403. Third, Mr. Csukás' Reddit re-posts regarding issues involving Gaza, Palestine, Israel and the ongoing Israel/Hamas conflict are not Mr. Csukás' statements or ones he adopted. Fed. R. Evid. 801(d)(2)(A), (B). Fourth, the statements are impermissible character evidence in violation of Rule 404.

First, the online material the government seeks to introduce is not relevant under Rule 401. The government's proposed statements – Mr. Csukás' June 11, 2022, book review of a memoir of growing up in Gaza, video posts described as "solidarity with Gaza," and Mr. Csukás' Reddit re-posts regarding Palestine and Israel/Hamas conflict – are not relevant to whether Mr. Csukás hit S.B. because of his national origin or religion. Nothing in the posts the government seeks to introduce shows animus toward Israeli or Jewish people. None of the posts show prejudice that would motivate Mr. Csukás to have committed the alleged offense. And they do not suggest a proclivity toward violence or antisemitic views or conduct. The posts merely show Mr. Csukás' political views.

Second, even if the statements are relevant, their probative value is substantially outweighed by other Rule 403 factors. As described in defense's motions in limine, Dkt. 52 at 2-4, there is a significant danger of unfair prejudice. "Unfair prejudice is an undue tendency to suggest decision on

an improper basis, common, though not necessarily, an emotional one." *United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2015). Should the government be able to introduce Mr. Csukás' book review, "solidarity" video, and Pro-Palestine Reddit posts, the government will be inviting the jury to conflate Mr. Csukás' political views as prejudicial views against Israeli or Jewish people and to rely on emotion or assumptions about his political views. The introduction of this evidence would also confuse the jury by suggesting to them that political views should take the place of the required elements of determining whether Mr. Csukás willfully hit S.B. because of his religion or national origin. For the same reasons, this evidence would mislead the jury. Because of the unfair prejudice, confusion, and misleading that would occur if Mr. Csukás' online statements were admitted, the Court should exclude them pursuant to Rule 403.

Third, Mr. Csukás' Reddit re-posts regarding issues involving Gaza, Palestine, Israel and the ongoing Israel/Hamas conflict are not Mr. Csukás' statements or ones he adopted. Fed. R. Evid. 801(d)(2)(A), (B).

To trigger the application of the hearsay doctrine, the Rules first contemplate there being a "statement" at issue. Under Rule 801(a), a "statement" is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." While the Rules do not explicitly define "assertion," the Ninth Circuit has construed assertions to include express and implied assertions. *See United States v. Torres*, 794 F.3d 1053, 1061 (9th Cir. 2015) (holding that where a declarant intends a question to communicate an implied assertion, and the proponent offers the question for the truth of the intended message the question meets the definition of hearsay). Assertions can either be verbal or nonverbal. Fed. R. Evid. 801(a). Here, the Reddit re-posts that the government seeks to bring in would be nonverbal conduct. Whether they constitute hearsay hinges on whether Mr. Csukás, in reposting, had an assertive intent to communicate a message. Fed. R. Evid. 801(a) Notes of Advisory Committee.

To qualify as an admission by a party-opponent under Rule 801(d)(2), a statement must be made by a party in the litigation and offered against that party. Fed. R. Evid. 801(d)(2). These statements include individual assertions and those attributed to the opposing party as if they made the statement. *Id.* The exemption for admissions by a party-opponent also includes tacit admissions,

1  which are statements offered against an opposing party when "the party manifested that it adopted or

2  believed [the statement] to be true." Fed. R. Evid. 801(d)(2)(B). Unlike party admissions, the

3  government as the proponent does not need to show that Mr. Csukás as the opposing party actually

4  made the statement. Rather, in this context, Mr. Csukás would adopt the statement of another and

5  becomes the declarant. Fed. R. Evid. 801(d)(2). Thus, tacit admissions involve the admission of two

6  statements: (1) the statement of another person and (2) Mr. Csukás's manifestation of adoption. The

7  government as the proponent of the statement has the burden of proving a party manifested adoption

8  by a preponderance of the evidence. *See Bourjaily v. United States,* 483 U.S. 171, 175 (1987).

9  Whether this burden is met is a preliminary question, which lies within this Court's discretion. *See*

10  *United States v. Monks*, 774 F.2d 945, 950 (9th Cir. 1985) (before letting in evidence as an adoptive

11  admission, "the district court must first find that sufficient foundational facts have been introduced

12  for the jury reasonably to conclude that the defendant did actually hear, understand and accede to the

13  statement").

14      An examination of re-posts of content on the former Twitter offers an informative analysis.

15  Before Twitter became X, the court in *Flynn v. Cable News Network* was faced with the assertion that

16  "as a matter of law[,] . . . by retweeting another's tweet, the retweeter is adopting every word in the

17  tweet as their own." *Flynn v. CNN, Inc*., 621 F. Supp. 3d 432, 435 (S.D.N.Y. 2022) (As defendant

18  CNN put it, a "retweet" is not simply forwarding a fact into existence). But the court refused to adopt

19  this proposition as a matter of law, finding that "there are many reasons that someone might retweet a

20  statement; a retweet is not necessarily an endorsement of the original tweet, much less an

21  endorsement of the unexpressed belief system of the original tweeter . . . ." *Id.* at 439. Similarly, in

22  re-posting others' thoughts on Reddit, Mr. Csukás is not endorsing a post to the level of manifesting a

23  tacit admission. Instead, it displays a mere potential of agreement in the content rather than an

24  express manifestation of agreement or belief. Mr. Csukás in reposting could have done so to spread

25  information rather than assert a specific message through reposting. As such, his re-posts should not

26  be considered to be independent statements. Accordingly, they are inadmissible.

27      Other cases have similar results. In *United States v. Safavian*, the court addressed the

28  admissibility of several e-mails sent by the former Chief of Staff ("COS") for the Administrator of

DEF'S OBJ. TO GOVT'S MTNS. IN LIMINE
*CSUKÁS*, CR 24–152 WHO

3

the General Services Administration ("GSA"), which were offered against him at trial for obstruction of justice. *United States v. Safavian*, 233 F.R.D. 12, 13 (D.D.C. 2005). The court held that the statements in the e-mails directly authored by the COS were admissible as a party admission. *Id.* at 43. The court then analyzed the admissibility of the forwarded e-mails as tacit admissions. *Id.* Based on the context and content of certain e-mails, the court stated that the COS "'manifested an adoption or belief' in the truth of the statements" of third parties by forwarding the e-mails. *Id.* However, other e-mails he forwarded "[did] not clearly demonstrate his adoption of the contents." *Id.* at 44. Although the court did not address the specific content that made certain e-mails admissible as tacit admissions, this case demonstrates that the mere act of forwarding an e-mail is not alone sufficient to satisfy a clear manifestation of adoption.

This principle is further demonstrated in *Sea-Land Service, Inc. v. Lozen International, LLC*. 285 F.3d 808 (9th Cir. 2002). Instead of acting as a mere messenger by forwarding an internal e-mail, an employee prefaced it with the statement, "Yikes, Pls [sic] note the rail screwed us up . . . ." *Id.* at 821. The court held that by including this prefatory statement, the employee "incorporated and adopted the contents of [the] original message, because her remark 'manifested an adoption or belief in [the] truth' of the information contained in the original e-mail." *Id.* The written statement in *Sea-Land* demonstrates a clear manifestation of the belief that the information within the original message was true. *See generally id.*

Here, the posts the government seeks to admit are closer to the postings in *Safavian* and *Flynn* rather than *Sea-Land* as Mr. Csukás did not demonstrate a clear manifestation of the belief that the information in the original message was true. He could have reposted the information because he thought it was informative, topical, or to just generally reciprocate support with other users. Whether a re-post is hearsay turns on whether the nonverbal act of "reposting" constitutes a statement. The holding in *Safavian* indicates it is not. *See Safavian*, 435, F. Supp 2d at 43. Although e-mails authored by the defendant were admissible party admissions, the court analyzed the e-mails he forwarded exclusively as tacit admissions. *Id.* at 43-44. In the same way re-posts add only the Reddit handle of the person who forwarded the post, the act of forwarding an e-mail without adding to the substantive message is not an independent statement of a party in their individual capacity. Despite a

re-post not qualifying as a statement under Rule 801(a)—and thus failing as a party admission—a re-post may still arguably be a tacit admission. If by clicking the "repost" button, a party manifests adoption or belief in the truth of the original post, then the original post and the party's act of "reposting" are admissible under the rule. However, because a "repost" is similar to forwarding a message, *Sea-Land* instructs that the act of "reposting" is not a manifestation of adoption or belief without an additional statement. Online activity that communicates through the simple click of a button, such as a "like" or "repost," is too ambiguous standing alone to qualify as an independent statement. And although there may be meaning behind the act, it is not a manifestation of adoption or belief in the truth of the original statement.

Fourth, the statements are an attempt to admit impermissible character evidence in violation of Rule 404. The government is using Mr. Csukás' social media posts to suggest a character trait of bias, prejudice, and possibly even violence toward Israeli and Jewish people. Rule 404(a) prohibits the use of evidence of a person's character or character trait to prove that on a particular occasion the person acted in accordance with that trait. By introducing the social media posts, the government is attempting to backdoor character evidence to impermissibly argue that Mr. Csukás' prior Pro-Palestine online acts suggest a character of animus toward Israeli or Jewish people.

Here, the government seeking admission of Mr. Csukás' social media posts is similar to *United States v. Giese*, 597 F.2d 1170 (9th Cir. 1979). There, the government sought to introduce counter-culture reading material of Giese following the bombings of a Navy and an Army recruiting center in Portland, Oregon. *Id.* at 1174. Though the book was admissible as a physical object because it had the fingerprints of Giese and his co-defendants, the government was not initially permitted to read the content of the book to jurors. *Id.* at 1185. In the case, Ninth Circuit stated that "[t]here is no general rule allowing government to use a person's reading habits, literary tastes, or political views as evidence against him in a criminal prosecution." *Id.* The content of the books was only permitted to be shared with jurors during the government's cross-examination after Giese opened the door to the line of questioning by putting evidence of his peaceable character at issue. *Id.* at 1188. Accordingly, the government should not be able to argue admissibility of specific posts of Mr. Csukás it believes are contradictory using Fed. R. Evid 404(a) unless Mr. Csukás offers testimony regarding his general

1  good character or good reputation with respect to Israeli or Jewish people. *See United States v.*

2  *McLister*, 608 F.2d 785, 789–90 (9th Cir. 1979).

3         Should the Court find Mr. Csukás' posts admissible, the defense similarly requests to seek

4  admission of posts from S.B.'s X account (formerly Twitter) as relevant and admissible at trial.

5

6  **2.    Opposition to Government MIL #2: Mr. Csukás should be permitted to introduce his
        admissible prior out-of-court statements based on Rule 106, as the statements are not
7        hearsay, and to protect his constitutional right to confrontation and a complete defense.**

8         The government seeks an order, pursuant to Fed. R. Evid. 801(d)(2)(A), prohibiting the

9  defendant from admitting his own statements. The Court should deny this request for three reasons.

10  **2.1.  The rule of completeness permits the Court to admit Mr. Csukás' statements.**

11         The government's list of online posts and statements it seeks to admit into evidence is only a

12  snapshot of Mr. Csukás' online posts and creates an unfairly prejudicial and misleading impression.

13  Should the Court admit the online posts the government requests be admitted, Mr. Csukás requests

14  that the Court allow him to admit additional posts under the Rule of Completeness in Federal Rule of

15  Evidence 106. That rule states, "If a party introduces all or part of a statement, an adverse party may

16  require the introduction, at that time, of any other part—or any other statement—that in fairness

17  ought to be considered at the same time. The adverse party may do so over a hearsay objection." Fed.

18  R. Evid. 106. In *United States v. Lopez*, the Ninth Circuit discussed the interplay of Rule 106 and

19  Rule 802. 4 F.4th 706, 715 (9th Cir. 2021).

20

21         When Rule 106 and Rule 802 collide, the critical inquiry for the trial court is the
        purpose for which the evidence is offered. Portions of a document or recording are
22        admissible under Rule 106 notwithstanding the bar on hearsay evidence when
        offered 'to correct a misleading impression in the edited statement' introduced by
23        an opposing party.' *Id.* [citing *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir.
        2014))]. . . . By contrast, hearsay evidence is evidence offered 'to prove the truth of
24        the matter asserted.' Fed. R. Evid. 801(c)(2). There is no conflict between evidence
        introduced under the rule of completeness and the bar on inadmissible hearsay
25        because the former serves the purpose of correcting a distortion created by an
        opposing party's misleading proffer of part of a document or recording, while the
26        latter serves the purpose of barring introduction of hearsay evidence proffered for
        its truth.
27

28  *Id. Lopez* held that the district court abused its discretion by categorically excluding the entirety of

1    the defendant's interrogation as inadmissible hearsay because the government's selected portions

2    risked misleading the jury by presenting a story contrary to that conveyed by the full recording. *Id.*;

3    *see also United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996), *as amended* (Oct. 21, 1996)

4    (discussing the Advisory Committee Notes to Rule 106 and stating that when one party uses a

5    portion of a document such that misunderstanding or distortion can be averted through presentation

6    of another portion, the material required for completeness is relevant and admissible); *United States*

7    *v. Begay*, 2022 WL 2235784, at *3 (9th Cir. June 22, 2022), *cert. denied*, 143 S. Ct. 837 (2023)

8    (Friedland, J., Watford, J., concurring) (district court abused its discretion by categorically excluding

9    the remaining portions of the defendant's interview as inadmissible hearsay because the

10    government's excerpts did not accurately present the content of the interview and should have been

11    admitted under the Rule of Completeness). A Rule of Completeness "analysis must be done on a

12    case-by-case basis in order to avoid the injustice of having the meaning of a defendant's statement

13    distorted by its lack of context." *United States v. Castro-Cabrera*, 534 F. Supp. 2d 1156, 1161 (C.D.

14    Cal. 2008).

15       Here, the available substitute of admitting *a more fulsome* group of online posts within the

16    relevant period as opposed to a limited subset of the government's choice of the most prejudicial

17    posts avoids the danger of presenting a misleading picture to the jury as to the context of when and

18    why the material was posted. It also avoids the misleading impression that these posts represent the

19    majority of Mr. Csukás' online presence, beliefs, and character. Similar to the concern of unfair

20    prejudice and the distorted picture presented by the government's cherry-picked google searches in

21    the case of *United States v. Adam Shafi*, which this Court presided over, this Court should not bar the

22    defendant's potential evidence of Mr. Csukás additional online posts if the government's selected

23    posts are to be admitted. *See* 3:15-cr-582-WHO, Dkt. 245 at 2. So long as the defense can present

24    circumstantial evidence that Mr. Csukás made such posts or reposts and can provide all posts for

25    completeness, the Court should allow their admission. *See id*.

26       The government's argument against the rule of completeness is not persuasive. Gov't Mot. in

27    Lim. at 4-5. The government does not discuss the Ninth Circuit's decision in *Lopez* and cites cases

28    that merely recite that completeness is not itself a proxy for admissibility. *Id.* (citing *United States. v.*

1    *Sine*, 493 F.3d 1021, 1037 n. 1 (9th Cir. 2007) (discussing the rule of completeness in a footnote and

2    merely reciting the rule and principle that the completeness does not itself make a statement

3    admissible); *United States v. Mitchell*, 502 F.3d 931, 965 n. 9 (9th Cir. 2007) (also discussing Rule

4    106 in a footnote because defendant waived the argument and noting the argument was foreclosed, in

5    part, because the Rule only applies to written and recorded statements). Finally, the government cites

6    *United States v. Collicott*, but that case supports the defense's position. Gov't Mot. in Lim. at 5,

7    (citing 92 F.3d at 983). *Collicott* states that material may be admissible to avoid misunderstanding or

8    distortion. *Id.*

9        **A.  Mr. Csukás' statements are not hearsay.**

10       Mr. Csukás' online posts should not be considered hearsay because, if the Court finds the

11   government's proffered posts are admissible, then the defense's requested posts also show his state of

12   mind and are excluded from the hearsay rule. A statement of the declarant's then-existing state of

13   mind or emotional condition is an exclusion to the rule against hearsay. Fed. R. Evid. 803(3). The

14   government is using Mr. Csukás' posts related to "Israel, Gaza, and Palestine, and the Israel/Hamas

15   war as *directly relevant to his motivation* in assaulting a stranger with a Jewish name." Gov't Mot. in

16   Lim. at 3. In other words, the government is using the online posts to show Mr. Csukás' alleged state

17   of mind and reasons for committing the alleged conduct. The government seeks to admit posts from

18   as far back as June 2022 to somehow bear on his motivation more than a year later when the alleged

19   offense took place. Should the court admit the government's proffered posts, the defense seeks to

20   include a more fulsome group of Mr. Csukás' posts to provide the more accurate, complete picture of

21   Mr. Csukás' state of mind as related to his views on Israeli and Jewish people. The defense does not

22   seek to admit his statements for the truth of the matter asserted in his posts, often relating to his

23   commentary of books, news, political events, and historical events. Courts have permitted statements

24   that show defendant's state of mind as exempt from the hearsay rule and this Court should do so here.

25   *See United States v. Sanchez-Estrada*, 394 F. App'x 428, 429 (9th Cir. 2010) (in an illegal reentry

26   case, holding the defendant's initiation of a conversation and statements to a border patrol agent were

27   not hearsay because they showed his state of mind as relevant to the element that he did not enter the

28   U.S. with the intent to be free from official restraint); *United States v. Musaibli*, 647 F. Supp. 3d 571,

581 (E.D. Mich. 2022) (finding statements made by unavailable witnesses in FBI interviews were

material to the defendant's state of mind and the most probative evidence to defense and thus

admissible under the residual hearsay rule, Fed. R. Evid. 807(a)).

### 2.2. Prohibiting the defense from admitting Mr. Csukás' statements would violate his constitutional rights to confrontation and a complete defense.

The government's agent(s) should not be permitted to testify about Mr. Csukás' online

statements and posts if the defense cannot cross examine the agents on other posts by Mr. Csukás.

Such a limiting of the defense's cross examination on a central subject of the agents' testimony

violates the Sixth Amendment's Confrontation Clause. *See Delaware v. Van Arsdall*, 475 U.S. 673,

679 (1986) (holding trial court erred by prohibiting all cross examination related to an event that the

jury may have found furnished the witness a motive to provide testimony favoring the prosecution).

"[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination," though "not

cross-examination that is effective in whatever way." *Id*. (emphasis in original) (quotations omitted).

Should the government's agents testify regarding the online posts, they will "open the door" to cross

examination on the agents' knowledge of Mr. Csukás' additional, relevant online posts. *See United

States v. Perry*, 857 F.2d 1346, 1352 (9th Cir. 1988) (defendant "'opened the door' to detailed cross-

examination when he attempted to 'explain away' those convictions by offering his own version of

the underlying facts."). Prohibiting cross-examination into the agents' testimony regarding the

central subjects of online posts would violate Mr. Csukás' Confrontation Clause rights. *See

Delaware*, 475 U.S. at 679; *United States v. Markevich*, 775 F. App'x 287, 290 (9th Cir. 2019)

(district court "violated the defendants' Confrontation Clause rights by severely restricting the

defendants' ability to probe [government witness] on cross-examination" on the "central subject of

[witness]'s testimony [regarding materiality of defendant's misrepresentations]").

"Further, a defendant has a due process right to present his version of the facts. When evidence

goes to the crux of the defense, exclusion of the evidence may be considered a constitutional

violation of due process." *United States v. Franco*, R1600268001-TUC-CKJ-EJM, 2017 WL

11466629, at *1 (D. Ariz. Sept. 7, 2017) (cleaned up); *see also Haischer*, 780 F.3d at 1284 (exclusion

of defendant's alleged abuse at the hands of her then-boyfriend and alleged co-conspirator violated

defendant's due process right to present a complete defense). If the Court prohibits the defense from offering the more complete picture of Mr. Csukás' posts and allows the government to present its cherry-picked posts that it claims are indicative of his willingness to commit the crime, the crux of the defense – Mr. Csukás' state of mind and unwillingness to commit the offense – will be excluded and he will be denied his right to put forth a complete defense.

3.  **Opposition to Government MIL #3: The defense's Lyft driver reviews and S.B.'s X exhibits are relevant and admissible.**

The government moves to exclude two sets of exhibits noticed by Mr. Csukás. The first is a summary of the reviews and information gathered regarding Mr. Csukás as a Lyft driver. The second, a set of exhibits from S.B.'s X (formerly Twitter) account. The account previously was publicly available but has since been made private—meaning that S.B. previously had the posts accessible to anyone in the public but has now restricted access to a limited and selected group.

Mr. Csukás' Lyft driver reviews are admissible. The government's case will paint Mr. Csukás as a bigoted, prejudiced person willing to inflict violence because of national origin or religion. In contrast, the reviews show Lyft passengers' opinion and Mr. Csukás' reputation as a respectful individual who has not acted with prejudice, animus, or violence toward other riders. The Lyft records are admission as business records pursuant to Fed. R. Evid. 803(6). The absence of additional complaints against Mr. Csukás can be used to prove the non-existence of any other complaints of Mr. Csukás acting with prejudice or animus against other drivers of Israeli or Jewish origin. Fed. R. Evid. 803(7). Additionally, the records could come is as character evidence because they show his reputation in the community and constitute permissible opinion evidence. Fed. R. Evid. 405.

The reviews themselves are admissible hearsay. The statements made by the riders reflect their then existing mental or emotional state. Fed. R. Evid. 803(3). Nevertheless, the defense need not seek their admission for the truth of the matter asserted, but instead, to show the absence of other complaints and as relevant to Mr. Csukás' state of mind. He is someone that values and depends upon positive rider feedback for his livelihood. Accordingly, he endeavors to maintain positive reviews and avoid negative feedback.

//

**4.  <u>Opposition to Government MIL #4:</u> Irrelevant evidence of Lyft's terms of service and evidence of the defendant's views are not inextricably intertwined and should be excluded.**

The government moves the Court for an order admitting evidence it contends shows "intrinsic proof of [Mr. Csukás'] willingness" to commit the charged offense and is "inextricably intertwined" with the offense. Gov't Mot. in Lim. at 6-7. For uncharged conduct to be admissible as "inextricably intertwined" evidence, the government has the burden of demonstrating either that the conduct forms part of a "single criminal transaction" with the charged offense, or that its admission is "necessary. . . in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995). The government argues that Mr. Csukás's violation of Lyft's terms of service and his online posts regarding Gaza, Palestine, Israel, and the Israel/Hamas war should be admitted on this basis. *Id*. The alleged violation of Lyft's terms of service is not separate conduct and, in any event, none of the evidence meets the "inextricably intertwined" criterion.

The government presupposes that Mr. Csukás violated Lyft's terms of service that prohibit discrimination and argues, thus this "evidence" is inextricably intertwined with the charged offense. The Court should reject the government's circular argument. Whether Mr. Csukás denied S.B. a ride based on religion or national origin and whether he punched S.B. for either reason require the same factual inquiry. There is no separate act. The underlying inquiry is Mr. Csukás' intent. This is not a civil trial or an employment investigation. The jury should not be misled, confused, or waste time determining whether Mr. Csukás complied with Lyft's terms of service. Any evidence of Mr. Csukás's termination from Lyft should be excluded; it is not probative of Mr. Csukás's guilt, and it will be unfairly prejudicial, misleading, and confusing to the jury. *See* Fed. R. Evid. 403.

As to Mr. Csukás social media posts, the government's motion is devoid of any analysis explaining how either of the two "inextricably intertwined" criterion are met. Gov't Mot. in Lim. at 6-7. It merely asserts the posts are "directly relevant" and "closely related to Defendant's motivation and willfulness." *Id*. at 7. This barebones claim does not meet the legal standard. It is patently obvious that the posts are not part of a "single criminal transaction." *See Vizcarra-Martinez*, 66 F.3d at 1012. In *United States v. Williams*, the Ninth Circuit held the standard was met where the court, in

1    a case involving the defendant's sale of cocaine, admitted his contemporaneous sale of crank. 989

2    F.2d 1061, 1070 (9th Cir. 1993). Here, Mr. Csukás' lawful social media posts have nothing to do

3    with any plan, intent, or conduct discriminating against or harming Jewish or Israeli people. The

4    posts constitute lawful, online expressions.

5         Mr. Csukás' social media activity is also not necessary to offer a "coherent and comprehensible

6    story regarding the commission of the crime." *See Vizcarra-Martinez,* 66 F.3d at 1012–13. The

7    inquiry is "whether the evidence bears *directly* on the charged crime." *United States v. Wells*, 879

8    F.3d 900, 929 (9th Cir. 2018) (emphasis added). "There must be a sufficient contextual or substantive

9    connection between the proffered evidence and the alleged crime to justify exempting the evidence

10   from the strictures of Rule 404(b)." *Vizcarra-Martinez*, 66 F3d at 1013 (holding that evidence of

11   possession of small amount of drugs during commission of the crime was not sufficient to support

12   introduction of drug usage evidence); *see also United States v. Dorsey*, 677 F.3d 944, 951-52 (9th

13   Cir. 2012) (holding that evidence that defendant, on trial for discharging a firearm, had a gun of the

14   same or similar type as that used in the shooting was inextricably intertwined because it showed that

15   he had the means to commit the charged crimes); *United States v. Daly*, 974 F.2d 1215, 1216 (9th

16   Cir. 1992) (holding evidence of a shoot-out was inextricably intertwined with the charge that

17   defendant was a felon in possession of a firearm because it was necessary to put illegal conduct into

18   context).

19        The social media posts do not bear *directly* on the charged crime. They were made independent

20   of S.B.'s Lyft ride request. They made no mention of S.B. nor any similarly situated individuals. The

21   posts did not prescribe vigilante violence be committed on civilians. The posts do not demonstrate

22   anti-Semitism or animus against Israeli people. The posts reflect a belief, shared by many in the

23   international law community and acknowledged by one court in this district, that the world is

witnessing the tragic killing and displacement of the Palestinian people. [1], [2] *Def. for Child. Int'l-Palestine v. Biden*, No. 23-cv-05829-JSW, (N.D. Cal. Jan. 31, 2024) ("Yet, as the ICJ has found, it is plausible that Israel's conduct amounts to genocide.") In fact, there are multiple posts on Mr. Csukás' subreddit that explicitly distinguish anti-Zionism and anti-Semitism, disclaiming any animus towards Jewish or Israeli people and featuring Jewish and Israeli voices as well as Arab ones. The government's collection of a smattering of Mr. Csukás' social media posts are not necessary context. The government will be able to present its full, comprehensible story by presenting S.B.'s testimony and the testimony of two other witnesses who were present when the incident occurred.

For these same reasons, the Court should reject the government's argument that the posts are probative of Mr. Csukás' motive, plan, preparation, and lack of mistake pursuant to Fed. R. Evid. 404(b). The government fails to put forth any analysis for its assertion. Gov't Mot. in Lim. at 7.

Finally, the danger of undue prejudice and confusion of the issues is exceptionally high should only the government's social media posts be admitted, significantly outweighing any minimal probative value that might arise from their admission. Therefore, in addition, due to the clear danger of undue prejudice, confusion of the issues, and misleading the jury, reference to Mr. Csukás' social media posts should be excluded.

Should the Court admit the government's cherry-picked social media posts, the defense requests an order from the Court for a more fulsome group of posts to be admitted as to not mislead the jury.

---

[1] The International Court of Justice has concluded that Israel's presence in the Occupied Palestinian Territory is unlawful, that Israel must cease immediately all new settlement activities, and that Israel is legally obligated to evacuate all settlers from the Occupied Palestinian Territory. *Legal Consequences arising from the Policies and Practices of Israel in Occupied Palestinian Territory, including East Jerusalem*, Advisory Opinion, ¶ 267–72, (July 19, 2024), https://www.icj-cij.org/sites/default/files/case-related/186/186-20240719-adv-01-00-en.pdf.

[2] South Africa, joined by six other ICJ member states, has sued Israel for alleged violations of the Convention on the Prevention and Punishment of the Crime of Genocide. *Application of the Convention on the Prevention and Punishment of the Crime of Genocide in the Gaza Strip (South Africa v. Israel)*, Order, ¶ 75–82, (January 26, 2024), https://www.icj-cij.org/sites/default/files/case-related/192/192-20240126-ord-01-00-en.pdf.

**5.   <u>Response to Government MIL #5</u>: The defense has complied with its discovery obligations.**

The government moves for an order: 1) precluding the defense from introducing evidence that he has not produced under his reciprocal discovery obligations, 2) requiring production of prior statements of defense witnesses pursuant to Rule 26.2 (reverse *Jencks*), and 3) precluding Defendant from presenting any affirmative defense not property disclosed. Gov't Mot. in Lim. at 7. The defense is aware of its disclosure obligations and has so complied.

**5.1. Discovery obligations under Rule 16**

The defense is aware of its discovery obligations under Rule 16(b) and continues to fulfill them. Further, the government fails to acknowledge the limited scope of Mr. Csukás' discovery obligations under Rule 16. Assuming the government complies with a discovery request under Rule 16(a)(1)(E), a defendant must, upon request, disclose "documents and objects" in his possession if he "intends to use them in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A). This obligation is significantly more limited than the government's, which must also disclose items in its possession that are "material to preparing the defense" or were "obtained from or belongs to the defendant," *id*. 16(a)(1)(E), as well as *Brady* and *Giglio* material.

Furthermore, a defendant's Rule 16(b) discovery obligation covers only items he "intends to use" in his "case-in-chief at trial," not "at trial" generally. That means that evidence that Mr. Csukás intends to use for impeachment, refreshing recollection, or rebuttal purposes does not fall under the purview of Rule 16(b). *See, e.g., United States v. Medearis*, 380 F.3d 1049, 1057–58 (8th Cir. 2004) (abuse of discretion to exclude, based on defendant's failure to disclose it to government prior to trial in alleged violation of his Rule 16(b) disclosure obligations, a letter that defendant sought to introduce solely to impeach statements made by complaining witness).

Finally, the rule plainly speaks of evidence that the defendant "intends to use." In other words, the rule applies only to evidence that the defendant has already decided or is near certain he will use in his case-in-chief. *See Intend*, Oxford English Dictionary ("18. transitive. To have in the mind as a fixed purpose; to purpose, design. (The chief current sense.)"); *Intend*, Black's Law Dictionary (11th ed. 2019) (first definition: "To have in mind a fixed purpose to reach a desired objective; to have as one's purpose <Daniel intended to become a lawyer>.").

The government fails to appreciate that Mr. Csukás cannot make all strategic decisions in advance of the government's case-in-chief. Prior to trial, the government and a criminal defendant are in vastly different positions in their ability to plan their cases-in-chief. Not only has the government investigated the case for a long time and controlled the timing of the charges, but the government goes first and gets to shape the trial because it has the burden of proving guilt beyond a reasonable doubt. By contrast, a defendant necessarily reacts to the government's strategic decisions in its case-in-chief and need not present a defense. "[I]t is generally recognized, by Bench and Bar alike, that the decision whether a defendant in a criminal case will present evidence or will testify in his own behalf is a matter of paramount importance." *State v. Goode*, 300 N.C. 726, 730, 268 S.E.2d 82, 84 (1980). And while "[s]uch matters can and should be discussed generally prior to trial, . . . the actual decision whether to put on a defense cannot intelligently be made until the close of the State's evidence." *Id*. Even if the defendant anticipates putting on a defense, competent defense counsel must reserve the decision to introduce specific items of evidence until she has learned the precise nature of the government witnesses' testimony and its other evidence. *Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense.").

At this time, prior to the government's presentation of its case-in-chief, Mr. Csukás has provided the exhibits it may use. Mr. Csukás has not anticipated the need for introduction of additional exhibits with the kind of certainty that the "intends to use" langue requires. If defense counsel's assessment changes prior to or during the trial as the government's evidence is introduced, Mr. Csukás will promptly disclose any additional exhibits to the Court and the government.

The government also moves for an order precluding Mr. Csukás from mentioning his health and medical issues. Mr. Csukás does not intend to self-diagnose himself and will comport with any evidentiary foundations required for admission of evidence regarding physical/mental condition.

Understanding the requirements of basic trial advocacy, the defense, as always, will abide by ethical and evidentiary rules throughout the trial. Surely, both parties reserve the right to object if the other side seeks to introduce otherwise inadmissible evidence. It is expected that counsel for both parties will object at trial as needed in the normal course if inadmissible evidence is offered.

1   Accordingly, this issue is moot.

2   **5.2. Reverse *Jencks***

3   As discussed above, the defense understands its discovery obligations under Federal Rule of

4   Criminal Procedure 16 and Rule 26.2, reverse *Jencks*. The defense cannot make all of its strategic

5   decisions at this time and, as cited, the defense may not be able to determine whether it will put on a

6   defense until the close of the government's case. *Goode*, 300 N.C. at 730. Mr. Csukás will promptly

7   disclose reverse *Jencks* material as required.

8   **5.3. Affirmative defenses**

9   The government seeks to preclude the defense from raising any affirmative defenses, including

10  justification and duress, that have not been properly disclosed. Again, the defense is aware of its

11  obligations and will so comply.

12

13  **6.   Response to Government MIL #6: Generally, the defense does not oppose the government's use of the noted exhibits in opening.**

14  The government has requested to show certain exhibits during their opening statement. Gov't

15  Mot. in Lim. at 12. Mr. Csukás has no objection to the government's request subject to the production

16  of the exhibits to the defense after the final exhibits have been selected for inclusion and ability to

17  object should any type of evidence not conform with the types of evidence that the government has

18  proffered it intends to use in its opening statement.

19

20  **7.   Opposition to Government MIL #7: The government should be restricted to exempting on case agent from the witness exclusion order.**

21  The government seeks a sequestration order excluding all witnesses from trial, except for FBI

22  Special Agent Kathleen Millspaugh and "any other agent [it may designate] as its representative."

23  Gov't Mot. in Lim. at 12-13. To the extent the government argues that it should be allowed more than

24  one designated case agent as exceptions to excluded witnesses pursuant to Federal Rule of Evidence

25  615, the defense opposes. Rule 615(b) refers only to the government's "representative," specifically

26  using the singular, not plural. Other courts have also affirmed that the use of the singular means just

27  that – a singular, not multiple, representatives for the government. *United States v. Pulley*, 922 F.2d

28  1283, 1286 (6th Cir. 1991) (holding Rule 615's reference to "A" representative is singular and the

government is accorded one such representative under 615(a)'s exception); *United States v. Farnham*, 791 F.2d 331, 334–35 (4th Cir. 1986) (holding as error trial court's decision to allow two government agent-witnesses to remain in courtroom throughout trial because it limited defendant's ability to test each agent's credibility and increased risk of collusion or tailoring of testimony); *see also United States v. Causey*, 609 F.2d 777, 777–78 (5th Cir. 1980) (not reaching the issue, but stating in dicta, "from its language it would reasonably be argued that [Rule 615(b)] does not grant counsel for a party the right to designate more than one representative."); *Oliver B. Cannon and Son v. Fidelity and Cas. Co.*, 519 F. Supp 668, 679 (D. Del. 1981) (exception codified in Rule 615([b]) held to be singular, thus plaintiff was unable to appoint more than one person as representative)).

The government has shown no reason why it should have more than one case agent or representative. SA Millspaugh is one of the two co-case agents and should be able to testify as needed for the government. The government cites no explanation as to why any additional agent or representative's presence is "essential to presenting the party's claim." Fed. R. Evid. 615(c). *See* Gov't Mot. in Lim. at 13. Accordingly, in the absence of any basis for multiple representatives, the Court should comply with Rule 615(b)'s plain language and the government should only be allowed one designated case agent.

**8.   Opposition to Government MIL #8: The Court may not impose an absolute unilateral ban on references to punishment or jury nullification.**

The government asks the Court to bar the defense from making any reference to punishment or jury nullification at any stage of the trial. Gov't Mot. in Lim. at 13-14. The government has cited no authority for imposing an *absolute, unilateral* ban on references to punishment. *See, e.g., Shannon v. United States*, 512 U.S. 573, 586-87 (1994) (holding that although courts are not required to, and generally need not, instruct juries about consequences of verdict of not guilty by reason of insanity, instruction may be necessary in some circumstances); *cf. United States v. Johnson*, 62 F.3d 849, 851 (6th Cir. 1995) (instruction about punishment not necessary because government did not mislead jury about seriousness of offense). Although information about the consequences of a jury's verdict generally is irrelevant to its task of determining whether a defendant is guilty of the charged offenses, *Shannon*, 512 U.S. at 579, the government's proposed ban on defense references to punishment

sweeps too broadly. For instance, there may be circumstances in which it would be relevant for a jury to know about potential penalties, not to encourage jury nullification, *see, e.g., Johnson*, 62 F.3d at 850-51 (noting that only purpose of jury instruction about punishment would be to invite jury nullification), but instead to support a defense argument about a witnesses' motivations and biases. Moreover, barring the defense from arguing about the seriousness of the jury's decision and that the jury's decision will affect Mr. Csukas' liberty infringes on his Fifth Amendment rights. *See United States v. Velazquez*, 1 F.4th 1132, 1137 (9th Cir. 2021) (prosecutor engaged in misconduct, in violation of Fifth Amendment, by trivializing the reasonable doubt standard by comparing it to making decisions like going for a drive or eating a meal).

If the Court does intend to preclude references to punishment at trial, its bar should encompass the government as well as the defense. *See Evalt v. United States*, 359 F.2d 534, 546 (9th Cir. 1966) (reversing conviction where government but not defendant was allowed to argue effect of not-guilty by-reason-of-insanity verdict). "The court should [impose] upon the prosecutor the same restriction as to the effect of a verdict of not guilty as it impose[s] upon the defense." *Id*. The government should not be permitted to argue or imply that Mr. Csukás is a danger to society, for example, or that the jury needs to ensure that he is punished for breaking the law. *Id*. (government may not invite jury to convict defendant, for society's protection, even though it might have believed defendant not guilty by reason of insanity); *see also United States v. Birrell*, 421 F.2d 665, 666 (9th Cir. 1970) (same). If the government is permitted to allude at trial to punishment, Mr. Csukás should be permitted to raise the issue as well. *Evalt*, 359 F.2d at 546. And if the government does in fact raise the issue at trial, Mr. Csukás is entitled to respond and to have the jury instructed to minimize any misrepresentations. *Shannon*, 512 U.S. at 887-88.

**9.  Opposition to Government's Motion in Limine 9: The Court should not prohibit the defense from arguing that the government has failed to meet its burden.**

The government contends that the Court should prohibit the defense from making references to or arguments about the failure to call witnesses that are equally available to both parties. Gov't Mot. in Lim. at 14-15. The defense must be permitted to argue that the government has failed to meet its burden of proof. And Mr. Csukás "has a right to put on a defense of [his] choosing, including an

argument that the Government has failed to meet its burden of proof." *United States v. Holmes*, 2021 WL 2044470, at *35 (N.D. Cal. May 22, 2021) (ruling defendant should not be precluded from arguing that the government's evidence is "anecdotal" because it failed to conduct a statistical analysis of Theranos test results or from characterizing the evidence as critical to the government's case) (citing *Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000) ("precluding [defendant's] attorney from arguing his theory of the defense in closing arguments" "violated [defendant's] right to counsel"); *United States v. Solorio-Soto*, 300 F. App'x 487, 488–90 (9th Cir. 2008) (limitation on cross-examination "prevented [defendant] from arguing" that government's Rule 404(b) evidence did not establish element of the offense and violated his right to present a complete defense). As in *Holmes* and the cases cited therein by District Court Judge Davila, Mr. Csukás should not be precluded from arguing that missing evidence or witnesses weigh in favor of finding the government has not met its burden.

## CONCLUSION

For the above reasons, Mr. Csukás requests that the Court grant his opposition to the government's submitted motions.

Dated:    October 1, 2024                              Respectfully submitted,

                                                       JODI LINKER
                                                       Federal Public Defender
                                                       Northern District of California

                                                            /S
                                                       CANDIS MITCHELL
                                                       ELISSE LAROUCHE
                                                       Assistant Federal Public Defender